3   189
29  525

CIRCUIT COURT FOR CLACKAMAS COUNTY, MARCH TERM, 1870.

## JAMES K. KELLY *v.* PEOPLE'S TRANSPORTATION CO., THOMPSON, LOVEJOY *et al.*

CORPORATION—DISABILITY.—It has been held that where lands have been purchased by a corporation that was not authorized to hold the premises, and by the corporation conveyed to a third party, a good title passed by the conveyance.

POWERS OF CORPORATIONS.—The power to purchase lands was at common law incident to corporations.

INCIDENTAL POWER.—Corporations may do many things incidentally, although the power is not expressly conferred. What is within the spirit and meaning of the statute conferring the power, is within the authority conferred.

VOIDABLE DEED.—An application to set aside a voidable deed, is addressed to the equity side of the court. And a grantor who seeks to show that his own deed is voidable, has no standing in a court of equity while he retains the purchase price.

USURPATION.—If a corporation has usurped privileges or franchises not belonging to it, to the detriment of the public, the remedy is by an action, in the name of the State.

THIS is a suit for partition of a tract of land, lying on the west bank of the Willamet River, and extending above and below the Willamet Falls, at Oregon City. The plaintiff avers that he is owner of an undivided half of the parcel, and that the People's Transportation Company is the owner of the other undivided half, and that each of the other defendants claim an undivided eighth of said premises, adversely to the said People's Transportation Company. All the defendants who have answered, admit the plaintiff's title, as alleged. The People's Transportation Company answer, claiming title to an undivided half, and deny, that the other defendants have any interest in the premises.

The defendants, Thompson and Lovejoy, answer, denying that the People's Transportation Company have any interest in the premises, and set up title to an undivided fourth in themselves. They allege, that in 1862, the plaintiff Kelly, being owner of the entire premises, conveyed to the defendants, other than the People's Transportation Company, an undivided half of the premises. And that said defendants,

other than the People's Transportation Company, in 1865, executed a conveyance to the Willamet Steam Navigation Company, purporting to convey to said Willamet Steam Navigation Company, the said undivided half; and that the latter company afterwards executed a conveyance, purporting to convey the same to the People's Transportation Company. That the Willamet Steam Navigation Company was a corporation organized, " for the purpose of carrying freight and passengers on the Willamet River, from its mouth to the head of steamboat navigation on said river, and transporting said freight and passengers over the portage at the Willamet Falls, by a railroad then constructed on the *eastern* bank of said Willamet River." That the company last mentioned, then owned said railroad on the east side of said river; that the lands in question were neither necessary nor convenient to carry into effect the objects of said corporation, and that said company was incapable of holding said premises. Similar allegations were made in regard to the defendant, the People's Transportation Company, the object of its incorporation being alleged to be, " for the purpose of carrying freight and passengers on the Willamet River, from Portland to the head of steamboat navigation on said river, and transporting freight and passengers over the portage at the Willamet Falls, by a railroad then constructed on the east bank of said Willamet River."*

A motion was made to strike out as immaterial and as being a statement of evidence and not of facts, the several matters set up affirmatively in these answers.

The motion was denied; it being *held* that some of the statements embraced in the motion were material allegations of fact.

The defendants, The People's Transportation Co., filed replications to the answers of the defendants, Thompson and

* On the trial, the articles of incorporation being exhibited, set out the objects of the incorporation of the People's Transportation Company, as follows: " The object of this incorporation, and the business in which it proposes to engage, is the transportation of passengers and freight on the waters of the Willamet and Columbia Rivers and their tributaries, and all necessary portages." The original answer failed to charge, in direct terms, what was the object of the incorporation, and being held bad on demurrer, the defendants filed their amended answer, setting forth the objects as stated in the text.

Lovejoy, and the cause was tried and submitted on the pleadings and proofs.

*J. K. Kelly* and *S. Huelat,* for the People's Transportation Co.

*Mitchell & Dolph,* for the defendants Thompson & Lovejoy.

UPTON, J. rendered the following decision:

The evidence shows that up to the present time the business of the defendant, the People's Transportation Co., at the portage, has been transacted wholly on the *east* side of the river. There was some evidence tending to show that, in case of very high water, a canal or railroad on the west side of the river, over the premises in controversy, would, if constructed, enable that company to do business more conveniently and profitably than it could be done on the east side. And that at some future time the P. T. Co. will, or may, have occasion to use a part of the lands in controversy, in the course of their business. And on the other hand, there was some evidence tending to show that the principal object of the P. T. Co. in holding the land, was to prevent its use by competitors.

I shall treat the case as if it were established as a fact, that the actual use of the premises in controversy, as a way or route for transportation, has not yet become necessary, and as if the transit on the east side of the river afforded a sufficiently good route; and shall consider the two questions —whether under this state of facts the corporation can hold the property; and whether, if a disability exists, the defendants, Thompson and Lovejoy are in a position to avail themselves of it. The former of these questions is now for the first time presented for adjudication in this state. This circumstance, as well as a knowledge that very large pecuniary interests may, in various ways and at various places, depend upon the rule that may be established, impresses me with the importance of arriving at correct conclusions; and I very much regret not being able to find authorities bearing more directly on the points involved.

There are several constitutional restrictions on the subject of corporations, but I am not sure that the questions here presented are affected by any of them, or by anything directly provided in the constitution, except the requirement that corporations should "be formed under general laws." By the general law, when three or more persons have complied with its provisions, "they shall thereafter be deemed a body corporate with power *** to purchase, possess and dispose of such real and personal property as may be necessary and convenient to carry into effect the object of the incorporation."

The powers and the restrictions which we are to consider are to be found in the language above quoted, the articles of incorporation, and the common law, or the law as it would stand independently of the provisions of our constitution and statutes.

It is undoubtedly the intention of our statute, as well as of the common law, that a corporation should have power to make all contracts that are lawful and can ordinarily be made by individuals in the kind of business the corporation is authorized to transact.

To determine with what degree of strictness or of liberality the language of the statute is to be understood, is a principal question, and particularly in arriving at right conclusions, as to the use of the words necessary and convenient in this statute, and ascertaining the legislative intent they are designed to express.

It is evident we are not to construe the word "necessary" in a sense in which it is sometimes used, as nearly equivalent to indispensable. It is not indispensable that there should be a railroad or canal at the portage in question. It is possible to do the business by means of road wagons; but it is not to be inferred that the law would limit the corporation to the use of that kind of property. The difficulty is in determining at what point, in the broad range that lies between what is absolutely indispensable and that which is merely convenient or desirable, this language is intended to fix a limit.

To take a less extravagant illustration: a corporation

may need the use of lands or of buildings, and yet the existence of the corporation may be limited to a term of years. It might be said, it is not necessary, in order to carry into effect the objects of the incorporation, that it should be owner in fee of real estate. But yet such a corporation may acquire, hold and transfer the fee in real property. (*People* v. *Mauran*, 5 Denio, 389.)   Or in the case of a railroad company, where it is necessary that the corporation should have a right of way, a mere easement, being only a privilege or liberty which one man has in the land of another; the ownership of the fee in the land over which the road runs may be convenient or profitable, but it will require a more liberal definition of the language of the statute than counsel have conceded, to enable us to say such ownership is necessary in order to carry the objects into effect.   Yet it is held that such a corporation may acquire title in fee.   (*Nicoll* v. *N. Y. & Erie R. R. Co.*, 2 Kern. 121.)

This corporation, according to the evidence, now holds, and is using in its business, a large amount of property, both real and personal, that, if we use the words in the more restricted sense, was not necessary in the business, at the time the land in question was conveyed, but which the increasing commerce of the country has rendered desirable, and which has now become an acknowledged necessity.   It has been urged in argument in this connection, that an object of the law is to stimulate and encourage enterprise and to introduce the cheapest and most expeditious mode of transit, and that whatever is necessary to secure cheap and rapid transportation is necessary to carry out the object of the corporation, and this position appears to me sound.

What is necessary and convenient, must, of course, depend on the nature of the business, and the circumstances under which it is carried on.   In all cases of uncertainty, it is evident the corporation, as purchaser, must judge in the first instance for itself whether the property is necessary and convenient; there is no tribunal to which it can resort to test the question in advance.   After the property is pur-

chased, it may be still a disputed question of fact whether it is or not convenient and necessary; and it may remain doubtful until judicial determination. It would certainly be a very harsh rule that would, in all cases of an error in judgment as to the necessity of the purchase, hold the purchase absolutely void. And I presume it is to avoid so harsh a rule that courts have held that where lands have been purchased by a corporation and by it conveyed to a third party, a good title passes by the conveyances, even where the corporation was not authorized to hold the premises.

The power to purchase lands was incident to corporations at common law. (2 Kent, 281; 3 Pick. 239; 1 Ves. and Beam. 226.) And a corporation may do many things incidentally, although the power is not in the particular instance expressly conferred. (*Moss* v. *Oakly*, 2 Hill, 265; *Attorney-General* v. *Life and Fire Insurance Company*, 9 Paige, 470; *Jackson* v. *Brown*, 5 Wend. 590; *Gordon* v. *Preston*, 1 Watt. 385.)

These cases show that what is within the spirit and reason of the statute conferring the power, and pertains to the object sought to be obtained, is within the authority conferred.

I must say I am not fully satisfied that a corporation may not invest surplus funds in any property in which an investment will be advantageous, if it can be done without adding a new branch of business to that set forth in its articles of incorporation.

There is no statute expressly prohibiting a corporation from holding real estate; and evidently a corporation may increase its wealth. In most cases, the motive that induces individuals to create corporations is that of making profit; and the legislature knowing this, has not directed how or when surplus earnings shall be distributed. It will not be contended, I assume, but that corporations may, without any express grant to that effect, accumulate and hold money above what is actually necessary to transact the designated business. Yet, if we read the statute literally, their right to hold such surplus money is as restricted as their right to hold other property. Money may be held, if we treat its

acquisition as incident to the business, without entering on other business than that specified in the articles of incorporation. The question arises whether unimproved lands are not in the same category. It is certain that much of the business of the country is now based on the theory that such corporations may hold lands not directly used in their business.

Acts of congress and of state legislatures, and the business habits of the community, although not amounting to judicial construction, are resorted to, as being in the nature of contemporaneous construction, in cases where the legislative intent is doubtful. So also, whatever was the usage elsewhere under similar statutes, at the time this act was passed, it is of peculiar weight. It has long been the practice of the general government to grant large bodies of land to corporations created under similar statutes, and our own legislature has, by its acts, recognized the right of such corporations to take, hold and dispose of lands, the direct use or employment of which was not necessary to carry into effect the object of the incorporation. Such grants were made to corporations, similarly empowered, in other states, before the enactment of our general law, and a vast amount of real property now rests upon titles thus acquired, and much real property is now held by corporations in this state, the *direct use* of which is not necessary to carry into effect the object of the incorporation. I refer to these grave considerations not because I am prepared to conclude from them, or to decide that a corporation has the right to hold such property, but as in my mind very cogent reasons against a rule that would hold such grants absolutely void. It is, I doubt not, upon considerations of public policy, and in view of circumstances such as are above mentioned, that it has been held that even a corporation that is disqualified from legally holding, may pass a good title to its grantee.

It is said that this land was purchased to enable this corporation to prevent all competition, and that such practices would foster monopolies to the great detriment of the country. To meet such contingencies, and to protect the public,

the law has provided (Code sec. 353) for an action in the name of the state, in cases where a corporation "exercises franchises or privileges not conferred on it by law." It would seldom be necessary to resort to an action there authorized, if all excessive acts of a corporation were absolutely void; and the legislature, I think, has proceeded on the idea that many such acts are voidable, and not void.

It is also said that this is not a case of mistake of fact, or of error of judgment, but that the corporation made the purchase knowing that the property was not needed in its business. The theory under which it is attempted to avoid the deed, is, that purchasing or holding this land is exercising "a privilege not conferred by law," and that the deed is for that reason absolutely void for want of capacity in the corporation to take. Under this theory, it is immaterial whether there was a mistake of judgment, or an intentional violation of the law; for, under this theory in either case the deed is void, and not voidable.

If the case of the defendants, Thompson and Lovejoy, was based on a claim that the deed is voidable, the question would be addressed to the equity side of the court, and of course they, as grantors, while still retaining the purchase money would have no standing in a court of equity upon which to ask to have the deed set aside. They, being grantors for value, cannot maintain their claim to the land, under any view that can be taken, except as a strict legal right, founded on the assumption that the conveyance from them is void, and not merely voidable.

If the corporation has usurped privileges or franchises not belonging to it, to the detriment of the public, the remedy is by an action in the name of the state.

If the sale is illegal, and Thompson and Lovejoy sold the property with a knowledge of the illegal purpose, they are so far in the wrong as not to be in a condition to ask equitable relief. If they sold under a misapprehension of its powers, or o fthe objects sought to be carried into effect by the corporation, and now find that the sale should be declared void, their pleading should set out their excuse, and they should offer to return the purchase money.

The prayer of the defendants, Thompson and Lovejoy, should be denied, and the property should be partitioned between the plaintiff and the defendant, the People's Transportation Company. (*b*)

---

CIRCUIT COURT FOR MULTNOMAH COUNTY, APRIL TERM, 1870.

---

(*b*) The cause was appealed to the supreme court and submitted and taken under advisement at the September term, 1870, but before the next term a compromise was effected and the cause dismissed without a decision being made in the supreme court.