Williams, J.
 

 It is contended by counsel for relator and conceded by counsel .for respondent that a corporation may not engage in the practice of a profession.
 
 *219
 
 In
 
 State, ex rel. Harris,
 
 v.
 
 Myers, Secy. of State,
 
 128 Ohio St., 366, 191 N. E., 99, it is specifically held that optometry is' a profession under the statutes of Ohio, and that articles of incorporation can not he granted in the state of Ohio to engage in the practice of optometry.
 

 The respondent, the Buhl Optical Company, is a foreign corporation organized under the laws of the state of Delaware; as such it cannot exercise in Ohio any powers which a domestic corporation can not exercise under the laws of this state. The authorities on this proposition are collected in 14A Corpus Juris, 1219. The respondent, therefore, can not engage in the practice of optometry in this state.
 

 The next inquiry relates to the extent to which the respondent may go in the sale of eye-glasses fitted to the eyes according to prescription.
 

 Section 1295-21, General Code, reads as follows: ‘ ‘ The practice of optometry is defined to he the application of optical principles, through technical methods and devices in the examination of human eyes for the purpose of ascertaining departures from the normal, measuring their functional powers and adapting optical accessories for the aid thereof.”
 

 Section 1295-22, General Code, reads as follows: “That on and after January 1, 1920, it shall not be-lawful for any person in this state to engage in the practice of optometry or to hold himself out as a practitioner of optometry, or attempt to determine the kind of glasses needed by any person, or to hold himself out as a licensed optometrist when not so licensed, or to hold himself out as able to examine the eyes of any person for the purpose of fitting the same with glasses, excepting those hereinafter exempted, unless he has first fulfilled the requirements of this act and has received a certificate of licensure from the state hoard of optometry created by this act, nor shall it be lawful for any person in this state to represent that
 
 *220
 
 he is the lawful holder of a certificate of licensure such as is provided for in this act, when in fact he is not such lawful holder or to impersonate any licensed practitioner of optometry or to fail to register the certificate as provided in section 1295-29 of this act.
 

 “Any person violating the provisions of this section shall be guilty of a misdemeanor and, upon conviction, for his first offense shall be fined not more than five hundred dollars at the discretion of the court and upon conviction for a second or later offense shall be fined not less than five hundred dollars, nor more than one thousand dollars or imprisoned not less than six months nor more than one year at the discretion of the court.”
 

 Section 1295-28, General Code, prescribes educational requirements and requires an examination in order to obtain such a certificate.
 

 The respondent corporation maintains places of business in various cities in Ohio and is engaged in the sale of optical goods, and in connection therewith has offices at which licensed optometrists carry on the practice of their profession.
 

 Prior to April, 1935, licensed optometrists were employed by the respondent corporation to act as managers for the company in its optical business, and in connection therewith to practice optometry, and for all such services, whether as managers or optometrists, they receive a salary and commission from the respondent corporation. Subsequent to the above named date the arrangement was changed by a written contract which provides in substance that the employment shall be from week to week, and that in consideration of the optometrist referring to the respondent corporation patients desiring glasses on prescription, and of respondent corporation referring to the optometrist all of its patrons desiring an examination of the eyes, respondent leases to the optometrist certain office space in its place of business, and also the use
 
 *221
 
 of respondent’s equipment for the examination of eyes. For testing eyes, the optometrist agrees not to charge exceeding one dollar, no part of which shall belong to the respondent, and further agrees that he will sell to respondent after the termination of the contract all his prescription files for one dollar.
 

 Practically all of those who go to the optometrist under contract with respondent are customers of the latter and are to some extent attracted by advertisements which respondent inserts in the daily newspapers. While the customer may take the prescrip-• tions received to any optician, he usually obtains his spectacles from the respondent. Respondent sends the prescriptions to the home office at Pittsburgh, Pennsylvania, where the lenses are ground and mounted in frames, and the eye-glasses, after being completed and returned, are fitted to the face by proper bending of the frames by an employee of respondent.
 

 What this court meant in holding that optometry is a profession was not that it was a learned profession, but that it was a limited statutory profession and one within the meaning of that word as used in Section 8623-3, General Code, which denies the right to incorporate for the purpose of engaging in the practice of a profession.
 

 There are a number of callings in which one may not engage until he has passed an examination and received a license or certificate, for instance, barbering (Section 1081-1
 
 et seq.,
 
 General Code), embalming (Section 1335-1
 
 et seq.,
 
 General Code), cosmetology (Section 1082-1
 
 et seq.,
 
 General Code), surveying (Section 1083-1
 
 et seq.,
 
 General Code), inspection of steam boilers (Section 1058-1
 
 et seq.,
 
 General Code), steam engineers (Section 1040
 
 et seq.,
 
 General Code), aircraft piloting (Section 6310-38
 
 et seq.,
 
 General Code), pharmacy (Section 1296
 
 et seq.,
 
 General Code), real estate brokerage (Section 6373-25
 
 et seq.,
 
 General Code), and nursing (Section 1295-1
 
 et seq.,
 
 General
 
 *222
 
 Code). To hold that in none of these, a corporation organized for legitimate purposes could employ persons so licensed would he going too far. A trade, business or ordinary calling is not changed by the requirement of licensing. In our judgment the rule is well stated in 6 Fletcher’s Cyclopedia of Law of Corporations (Permanent Edition), 241:
 

 “Laws regulating a particular'trade, business or calling, other than a learned profession, and requiring those desiring to engage therein to first procure a license or certificate from the proper authorities do not prevent a corporation from conducting such trade, business or calling through the instrumentality of employees or agents who are duly licensed or certificated, even though such laws may in terms prohibit the licensing of corporations. Thus, the plumbing trade or business may be carried on by a corporation, though the law requires plumbers to be licensed, and, notwithstanding the law requires persons practicing architecture to take out a certificate, a corporation may engage in architectural work, provided the actual architectural work be done by regularly licensed architects or under the supervision of regularly licensed architects, particularly where the statute authorizes corporations to employ licensed architects.”
 

 Just how far incorporated bodies may go with respect to the various licensed trades and callings it is not necessary now to determine. It should be borne in mind, however, that optometry comes under a different category in that it involves an examination of part of the human anatomy to discover defects and determine how to remedy them, by fitting eye-glasses. Some understanding of the human
 
 body is
 
 therefore necessary. Accordingly this court has classified optometry as a profession rather than as a trade, business or ordinary calling.
 

 This court has never held and does not hold in the instant case that compames incorporated to engage
 
 *223
 
 in the business of an optician may not employ optometrists in connection therewith. They may; but since they cannot incorporate to engage in optometry they can not do indirectly what they are forbidden to do directly. They can not employ optometrists to engage in the practice of optometry. The optometrists employed can as employees do only the work the employers are authorized by law to do.
 

 An incorporated optical company may lease an office or equipment to an optometrist, and even carry his advertisements among its own. But while the optometrist is practicing his profession in such office and with such equipment, may the company employ him in its optical business? If this course were permitted the optometrist could bargain for and obtain such a high salary from his employer that he could afford to serve customers free of charge or for a nominal fee.. In this way the amount of salary he could demand would be greatly augmented by attracting customers to the optical business through inexpensive optometrieal services. The office of the optometrist would become a mere adjunct of the optical business and the corporation in effect would be practicing optometry. In order to give effect to the existing law of this state, this court holds that if a corporation leases quarters as an office to an optometrist the latter can not be employed by the lessor in its optical business, and, by parity of reasoning, no optometrist who occupies independent quarters of his own can contract with an optical company as employee or otherwise so as to interfere with or control the practice of the optometrist or make such practice an adjunct or aid to the optical business.
 

 The practice of the optometrist must be wholly separate from and independent of the business of the optical company, but, where the optometrist leases quarters or equipment or both from the optical company, the latter may receive prescriptions for eye
 
 *224
 
 glasses from such optometrist the same as from any other. The optical company, however, can not lawfully exercise any control over the optometrist; nor fill prescriptions issued by an optometrist legitimately employed by it; nor advertise in such a way as to lead the public to believe that it does the work of the optometrist; nor do anything through an employee that amounts to the practice of optometry as defined in Section 1295-21, General Code, even though such employee be an optometrist; nor enter into a contract with the optometrist by which the optometrical work of the latter is regulated or controlled, in the prices to be charged, the customers to be served, or the manner of doing the work; nor to retain or acquire control over or ownership of or interest in any records, copies of prescriptions, or prescriptions of the optometrist.
 

 Section 1295-34, General Code, exempts from the act “persons selling spectacles and eye-glasses but who do not assume directly or indirectly to adapt them to the eye, or neither practice nor profess to practice optometry.”
 

 Any store may sell eye-glasses not fitted to the eye and in doing so may bend the frames to fit the face, since this is not an adaptation to the eye. Furthermore there is nothing in the statutes which prevents the optician from bending the frames for the same purpose.
 

 The relator is not entitled to have the respondent ousted from doing business in the state of Ohio but is entitled to a judgment ousting it from engaging directly or indirectly in the practice of optometry and especially from doing those things which an optical company is forbidden to do as set forth in this opinion.
 

 Writ allowed in part.
 

 Weygandt, C. J., Stephenson, Jones, Matthias, Day and Zimmerman, JJ., concur.