HERMAN, Executor, and others, Respondents, vs. WISCONSIN VALLEY IMPROVEMENT COMPANY, Appellant.

*January 15—February 13, 1945.*

For the appellant there was a brief by *Genrich & Genrich,* attorneys, and *Herbert L. Terwilliger* of counsel, all of Wausau, and oral argument by *Mr. Terwilliger.*

For the respondents there was a brief by *Frank E. Hebert,* attorney, and *E. C. Smith,* guardian *ad litem,* both of Tomahawk, and oral argument by *Mr. Hebert.*

ROSENBERRY, C. J.    Since October 12, 1922, the defendant had the right to flow the three parcels of land involved up to contour 104.    Having secured from the public service commission authority to raise the water level in the Spirit reservoir to contour 107, it began a condemnation proceeding under ch. 32, Stats.    A hearing was held.    The commissioners appointed by the county judge made an award at $332.    After the appeal taken by the plaintiffs, pleadings were filed and a trial had.    Three parcels of land were involved, the north half of the northeast quarter of section 7, township 34 north, range 6 east, known as the "home place," and it will be so referred to.    The second parcel consisted of the west half of the northwest quarter of section 12, township 34 north, range 6 east, known and described as the parcel east of Van Harpen's place. The third parcel is described as the northwest quarter of the northeast quarter of section 13, township 34 north, range 5 east, known as the parcel on County Trunk Highway O.    It will be observed that these parcels of land are not contiguous. The parcel east of Van Harpen's place is some four and one-half miles east of the home place.    The parcel on County Trunk Highway O is on the south side of the Spirit river and consequently south of the main flowage and distant approximately two miles from the home place.

The jury found that the value of the home place with improvements before the increased flowage was $25,000, and that what remained after the taking was of the value of $23,975, a difference of $1,025; that the value of the parcel east of the Van Harpen place was $2,000 before the increased flowage and thereafter was of the value of $1,650, a difference of $350; that the value of the parcel on County Trunk Highway O before the increased flowage was $500 and the value of what remained after the taking was $475, a damage of $25.

The question for decision is whether there is credible evidence to sustain the finding of the jury. We will first consider the evidence with respect to the home place, consisting of eighty acres of land upon which was situated the farm buildings. The amount of land overflowed on this description was 1.52 acres.

Harry Herman, the executor, testified that it had been affected by the waves; that he had done some riprapping; that the value of the home place before the water was raised was $30,000 and thereafter it was $27,000.

Ben Schreffler, another witness for the plaintiff, a farmer, testified that the value of the home property was prior to July, 1943, $30,000; that the value after the raising of the water was $27,000. When he testified before the commissioners, he testified that the damage to the home place would be about $1,200; that he has since changed his mind and thinks it is $3,000.

Frank Steibe, the third witness called on behalf of the plaintiff, testified that he was a farmer; that prior to July, 1943, the home place was worth $30,000 and thereafter its value was $27,000; that he figured the land in the homestead eighty at $100 an acre and the balance of damage is based on the amount of riprapping that would be necessary. He also considered the fencing and damage caused by seepage. *As to the riprapping, the same conditions that existed prior to August, 1943, existed thereafter.*

For defendant:

M. W. Cuyler, manager, treasurer, and assistant secretary of the defendant company, testified: The pond was first filled in August, 1943. A fourteen-foot head was maintained at the dam before the raise and now it is seventeen feet.

R. W. Smith testified that he was field superintendent for the Wisconsin Valley Improvement Company; prior to the last six years he was civil engineer and county treasurer of Bayfield county, made the surveys and measurements which resulted in the preparation of the maps offered in evidence;

that the value of the land today is $75 to $80 an acre.  Prior to the last raise there were between five and ten acres occupied by the reservoir.  The bank on the north side of the river next to the home place is steep.

George Schroeder testified that he was former sheriff, clerk of the court, and member of the county board.  In regard to the home place the land is a clay soil, some stones.  It slopes south toward the river, quite abrupt banks along the flowage there.  The value of the farm without any personal property is $6,000 or $7,000.  If you reduce the eighty by 1.97 acres, the only difference in value would be the value of the land taken and perhaps $10 for fencing.  We allowed $150 damages to the home place.  The damage to all three separate parcels, I figure at $300.

On cross-examination: I was not inside of the house.  I base the value of this whole farm between $6,000 and $7,000 on values of farms I know that have been sold.  There was no riprapping when I was there.

Edward F. Bosworth testified: In my opinion the damage to the homestead eighty by the raising of the water was $152.

Otto F. Nienow testified: In my opinion the damage done to the homestead eighty was $152.

Francis X. Fox, county land agent for Lincoln county and county surveyor, testified: In regard to the homestead eighty, it is the main eighty in the farm.  The major part of it is tilled and plowed, sowed to crops.  There is a steep bank about seventy or may be eighty per cent of the frontage there, and that is unimproved.  I appraised the value of the damage to the homestead eighty at $45.60.  I did not figure anything for seepage because there was seepage before where the old flowage line was.

Alex Deleglise, city engineer of Merrill, formerly city engineer of Antigo, made a detailed survey of the land in question. He testified: The value of the home eighty in my opinion before the three-foot rise in the reservoir was about $8,000. The value of this farm after the 1.52 acres was taken was between $100 and $150 less.  The value of the land is approximately $45.  My testimony is that the value afterwards was

$45 less, plus a little something for washing. It won't be over a quarter of an acre. That is about $7 or $8. It is my testimony that the damage to this particular eighty was $45 plus $7 or $8, plus probably $15 worth of fencing. Plus damage to the use of the buildings by the loss of the use of the land is probably $50, total amount $115 or $116.

*W½ of NW¼—Section 12, township 34, range 6 east. Parcel east of Van Harpen's place:*

For plaintiff:

Executor Herman testified: The eighty acres east of the Van Harpen place is pasture land and we use it only for that. The whole south end of this parcel abuts on the flowage. 4.11 acres are taken by the increased flooding. The value of the eighty acres east of the Van Harpen place before the recent raise in the head of water was $3,000. As a result of the flooding it is now worth $2,000.

Ben Schreffler: I would judge the property east of the Van Harpen place prior to July, 1943, was worth about $3,000. The value of this description is now about $2,000. In regard to the property east of the Van Harpen place I testified before the commissioners that the stumpage of the pulp and firewood at $400 and valued the land at $50 an acre. I placed the damage at $800. I based my estimate of $1,000 damage to the eighty-acre tract next to Van Harpen's on the fact that the flooding of the land would destroy the grass that is in there for the pasture and the damage it would do to the fences. It has been dragged up and seeded to timothy and clover. Except as it has been prepared for pasture, there is no plowing.

Frank Steibe: The tract east of Van Harpen's is pasture land, approximately four and a fraction acres are affected by the raising of the water level. Prior to July, 1943, the value of this tract was $3,000. After the raising the value would be $2,000.

For the defendant:

R. W. Smith: On the eighty east of the Van Harpen place there are 4.11 acres affected by the flowage. The land is

worth $30. The difference in the valuation before and after the raising would be the difference between 4.11 acres at $30 an acre, $123.30.

George Schroeder: I included the property east of Van Harpen's with the home farm and included that in the $6 or $7,000 value I put onto it. (Witness did not value the land east of Van Harpen's separately.)

Edward F. Bosworth: In my opinion the damage to the eighty east of Van Harpen's was $150.

Otto F. Nienow: The damage to the property east of Van Harpen's is $150.

Francis X. Fox: The value of the parcel east of Van Harpen's before the taking of the 4.11 acres was about $100. The value after the taking was $85, making a difference in market value before and after of $15.

Alex Deleglise: In regard to the 80 acres lying east of the Van Harpen place, that land is burned, cut-over land. The value of that property before the water was raised was from $2 to $5 an acre. The value of the total tract before the water was raised was between $160 and $400. The value after was about $16, $18, or $20 less. The total damage to this parcel was between $16 and $20 by virtue of the raising of the water.

*NW¼ of NE¼—Section 13, township 34 N., range 5 E. Parcel on County Trunk O:*

For the plaintiff:

Harry Herman, executor: The amount of acreage overflowed is 1.97 acres, cut-over land we have kept for pasture use. As a result of this flowage, we will be unable to use it for that purpose. It will have no value for pasture purposes at all. It was worth $2,000 before the raise in the flowage. It isn't worth anything to me now.

Ben Schreffler: The description on County Trunk O would make good pasture land. Since the contemplated raising of the water, I can't think it could be used for pasture purposes. Before July, 1943, this description was worth about $1,200. Now it would be worthless.

Frank Steibe: I visited the property on County Trunk O. That is pasture land. I placed a value on that prior to July, 1943, at $1,200. As a result of the raising of the water it cannot now be used for pasture purposes to the Herman farm. This is because it will be impossible to keep fences along this land so that the stock will have access to water and if you build the fences on the high land, your stock won't have water. So with the raise in the water, this eighty-acre tract would have no value whatever to the Herman farm.

For the defendant:

R. W. Smith: The total amount of land that is affected by this increase of head is 1.97 acres. I have been over that entire forty. It is just a cut-over forty and in my estimation has nothing to do with the Herman-estate farm and is perhaps worth $10 an acre. The difference between the value before and after would be $10 an acre or $19.70.

George Schroeder: The property on County Trunk O is cut-over land. I would say it would be worth about $10 an acre. If you reduce that eighty by 1.97 acres it would not have very much effect as to the value for sale of that eighty. The only difference in the value would be the difference in the value of the land taken, and there might be if there was a fence on it, you might have to move it back further and that of course would cost something. The damage to all three separate parcels, I figure at $300.

Otto F. Nienow: The damage done to the property on County Trunk O was $30. The property on County Trunk O was brush land.

Francis X. Fox: In regard to the land situated next to County Trunk O, it is my opinion that the value of that land before the 1.97 acres was taken was $50. The value after that land was taken was $40, making a damage of $10.

Alex Deleglise: The damage done to the property adjacent to County Trunk O was in my opinion about $8.

There is a great deal of evidence in the record in regard to the topography of the land, the nature of the soil, riprapping,

seepage, and fencing. It would extend this opinion to an unreasonable length to state it or even to give a digest of it. We have carefully examined it, together with the opinion of the trial court in which it sought to sustain the verdict. It is considered that the evidence upon which the verdict of the jury for the plaintiff is based is but little short of fantastic. This is best illustrated by the testimony respecting the land near County Trunk Highway O. This is a cut-over eighty. Through the north forty a small creek runs. Raising the water causes the water to back up in this small stream and to flood 1.97 acres. The soil is of the same nature as soil generally in that neighborhood. There is no evidence of undue seepage and yet the witnesses for the plaintiff testify that flooding the 1.97 acres makes the entire eighty-acre tract worthless.

The testimony as to the value of the home farm given by the witnesses for the plaintiff is also extravagant. The raising of the water resulted in the taking of 1.52 acres. The principal value of this eighty acres of land is to be found in the improvements, but there is no evidence whatever that the improvements or the usefulness of these improvements is in any way affected by the taking of this 1.52 acres. The riprapping which some of plaintiff's witnesses testified to would cost $2,000. The evidence discloses that if the shore line were riprapped it would only save a very small amount of land from erosion as the bank shortly comes to an angle of repose and erosion ceases. It would be foolish to spend $2,000 to save perhaps a quarter of an acre of land worth at the outside $100 an acre. The evidence is full of instances of this sort.

Apparently, the witnesses for the plaintiff gave no consideration to the fact that all of this land was affected by the flowage when the dam was maintained at the head of fourteen feet; that there was seepage caused by the original flooding of the land and it was only slightly increased by the additional height of three feet as is indicated by the amount of land taken.

It is considered that the trial court might have set aside the verdict of the jury in this case upon its own motion.

Upon the face of the record, it is plain that the jury were misled by the extravagant and incredible testimony of the plaintiff's witnesses as to the damage done to the home place and the parcel east of the Van Harpen place. Although the plaintiff's witnesses testified that the parcel on County Trunk Highway O was worthless after the water was raised and that before the raising of the water it was worth $1,200, the jury allowed only $25 damages, and as to that there is no complaint by either party. That was a situation within the common experience of the members of the jury.

No question is raised upon this appeal as to the correctness of the court's instructions. It is apparent upon the face of the record that the finding of the jury that the market value of the home place was diminished in the sum of $1,025 by the taking of 1.52 acres of land is so extravagant and unreasonable that it must have been the result of passion or prejudice on the part of the jury. It cannot be justified on any other theory than the expenditure of a large sum for riprapping to protect a very small quantity of land of little value. The testimony in the case shows that shores of the character of those in this case are not ordinarily riprapped for that reason. The parcel east of the Van Harpen place as to which the jury found that the market value was diminished in the sum of $350 by the taking of 4.11 acres, while not so excessive as the finding in regard to the home place, is still unreasonable and the result of some feeling of passion and prejudice on the part of the jury. This parcel was nothing but pasture land. It sustained very little, if any, damage due to seepage that was not already incurred as a result of the flowage to the height of fourteen feet.

Upon all the evidence in the case it is considered that a jury, properly instructed and taking an unbiased and unprejudiced view of the testimony, would probably not render a verdict in excess of $500 for the damage to the three pieces, giving

proper consideration to the fact that no severance damages were incurred by reason of the prior condemnation and the raising of the water to the height of fourteen feet.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded to the trial court with the option to the defendant to permit judgment to go against it in the sum of $500 or take a new trial; this option to be exercised within twenty days from the date of the filing of the *remittitur* in the office of the clerk of the trial court and the proper judgment or order entered accordingly.