Argued November 13; reversed December 23, 1947

STATE ex rel. SISEMORE *v.* STANDARD
OPTICAL COMPANY

188 P. (2d) 309

*Dean F. Bryson*, Special Assistant Attorney General, of Portland (with L. Orth Sisemore, District Attorney for Klamath County, of Klamath Falls, on brief), for appellant.

*Harry D. Boivin* and *Richard B. Maxwell*, both of Klamath Falls (Harry D. Boivin and Farrens & Maxwell on brief), for respondent.

Before ROSSMAN, Chief Justice, and LUSK, BELT, KELLY, HAY and WINSLOW, Justices.

HAY, J.

By leave of court, the State of Oregon, on the relation of the district attorney for Klamath County, commenced this proceeding by the filing of an information in *quo warranto*, charging the defendant, a private corporation, with having unlawfully engaged in the practice of optometry, and praying judgment of ouster of defendant from its corporate rights, privileges and franchises. The defendant answered,

admitting its existence as a corporation, but otherwise denying generally the allegations of the information. A hearing was had before the court without a jury, and the court thereafter made general findings of fact and conclusions of law in favor of defendant, and entered judgment and decree dismissing the information. Plaintiff appeals.

■ In most jurisdictions, *quo warranto* is a remedy available to the state against a private corporation for abuse or usurpation of corporate powers. 44 Am. Jur., *Quo Warranto,* sections 40, 41, 42; Annotations, 53 A. L. R., 1038, 1039; 105 A. L. R., 1376. The writ of *quo warranto* and proceedings by information in the nature of *quo warranto* were, however, abolished in Oregon in 1862 (section 8-801, O. C. L. A.), but the remedies theretofore obtainable under those forms may now be had by action at law in the name of the state. Section 8-803, O. C. L. A.; *Kelly v. People's Transportation Co.,* 3 Or. 189, 196; *State ex rel. v. Port of Tillamook,* 62 Or. 332, 336, 124 P. 637. In 1910, by constitutional amendment, the discretionary right to take original jurisdiction in *quo warranto* was given to the supreme court (Am. Art. VII, § 2), but the circuit courts have no such jurisdiction. We construe this proceeding, therefore, despite its erroneous label, as being an action at law in the name of the state, under the provisions of section 8-803, O. C. L. A.

The defendant, Standard Optical Company of Oregon, is an Oregon corporation. It was organized in December, 1940. The purposes and objects for which it was incorporated, as contained in its articles of incorporation, are "to operate and carry on a general optical and merchandising business in all its branches, including manufacturing, buying and selling, at wholesale and retail, for cash or on credit, all optical goods

and accessories thereto, and other merchandise which can be sold in optical stores, including fountain pens, radios and jewelry." It operates stores in Eugene and Klamath Falls, Oregon. In each of its stores it employs a registered optometrist as manager and salesman, whose name, as "Registered Optometrist in Charge", is displayed in the store. Defendant advertises that the registered optometrist will, for the convenience of the public, make eye examinations. It contends that he makes such examinations without charge to the customer, even if the examination should disclose that no eye glasses are needed, and, if glasses are needed, irrespective of whether or not such glasses are purchased of defendant.

■ Where the right to practice a profession is conditioned upon pursuit of a course of specialized training, the acquiring of a diploma, the passing of an examination, and the furnishing of a certificate of good moral character, it is obvious that a corporation cannot comply with such requirements. 6 Fletcher, Cyclopedia Corporations, Perm. Ed., section 2523; *Thompson Optical Institute v. Thompson*, 119 Or. 252, 264, 237 P. 965; *State v. Kindy Optical Co.*, 216 Iowa 1157, 248 N. W. 332, 333.

It is insisted that there is nothing in public policy to prevent a corporation from offering to the public the skilled services of a licensed professional man as an adjunct to its own business, so long as it publishes the fact that such professional man is an employee. Defendant argues that such an arrangement does not involve professional practice by the corporation-employer, unless the benefit derived by the employer is directly related to the professional work performed. This argument is, we think, beside the point. The underlying reason for the regulation of the professions

of law and medicine by the state is that the practitioners thereof ''render services which are either vital or fiduciary in a high degree and which may be required at a moment's notice by any member of the public however ignorant. Therefore, if the competent practitioners were not clearly distinguished, the mass of the public would fall into the hands of quacks when their most fundamental needs were at stake.'' Encyc. of the Social Sciences, vol. 12, p. 479. It is true, as defendant points out, that the employment of professional men by corporations is common-place. For example, there are so-called ''company doctors'', ''company engineers'' and ''company lawyers.'' Those practitioners, however, do not offer their services to the public at large, but only to one employer. Drug stores are often operated by corporations, which employ licensed pharmacists therein. The statute, however, permits corporations to operate pharmacies, provided a registered pharmacist is in charge. Section 58-305, O. C. L. A.

The Oregon Optometry Act is codified as sections 54-701 to 54-743, inclusive, O. C. L. A. It defines the practice of optometry as the employment of any means other than the use of drugs for measurement or assistance of the power or range of human vision or the determination of the accommodative and refractive states of the human eye or the scope of its functions in general or the adaptation of lenses or frames for the aid thereof. Section 54-701. A board of examiners in optometry is created. Section 54-711. The board is given power to make rules of procedure and for the government of applicants for certificates of registration as optometrists. Section 54-713 (9). No person may practice optometry or advertise or hold himself out as an optometrist without first having obtained from the

state board a certificate of registration. Section 54-721. Every applicant for such a certificate must give satisfactory evidence of his good moral character, must be a citizen of the United States, must have had the educational equivalent of a standard high school course, must have graduated from a school of optometry recognized and approved by the board, and must pass an examination in the anatomy of the eye, in subjective and objective optometry including the fitting of glasses, in the principles of lens grinding and frame adjusting, and in such other subjects as pertain to the science and practice of optometry. Section 54-723, as amended by ch. 208, L. 1943. The certificate of any registered optometrist may be revoked or suspended by the board for any of the following causes: (1) his conviction of a felony or misdemeanor involving moral turpitude; (2) when his certificate was procured by fraud or deceit; (3) unprofessional conduct, or gross ignorance or inefficiency in his profession; (4) house to house solicitation of business or the employment of "cappers" or "steerers". Section 54-731, as amended by ch. 208, L. 1943.

"Unprofessional conduct shall mean the obtaining of any fee by fraud or misrepresentation; * * * the advertising of optometric services or treatment or advice in which untruthful, improbable, misleading, deceiving or impossible statements are made and statements such as 'lowest prices in town,' 'reduced prices,' and words of like import are included herein [therein]; or habitual intemperance, or gross immorality, or permitting another to use his certificate." Section 54-731, as amended by ch. 208, L. 1943.

Among other unlawful acts proscribed by the act are the practicing of optometry under a false or assumed name, and the practicing of optometry or adver-

tising or holding oneself out to be an optometrist without having a certificate of registration. Section 54-742. It will be observed that the statute not only specifically designates optometry as a profession, but that it imposes upon optometrists standards of qualification of such a high order that they may very well be termed professional standards. It was undoubtedly the intention of the legislature, in adopting the optometry act, to promote the health, safety and welfare of the people of the state. Such regulation of a profession, the practice of which affects the vital interests of the people, is a proper exercise of the police power. *Painless Parker v. Dental Examiners,* 216 Cal. 285, 296, 14 P. (2d) 67; *People ex rel. state M. Exrs. v. Pac. Health Corp.,* 12 Cal. (2d) 156, 82 P. (2d) 429, 119 A. L. R. 1284; *Ezell v. Ritholz,* 188 S. C. 39, 198 S. E. 419, 422. The prohibition of the practice of optometry by unlicensed persons would be rendered ineffective if corporations were permitted to furnish optometrical services through salaried employees who are licensed optometrists. *Ezell v. Ritholz,* supra; *Neill v. Gimbel Bros.,* 330 Pa. 213, 199 A. 178, 182.

The defendant argues that optometry is not a profession, and that an optometrist is nothing but a skilled mechanic. A profession has been defined as: "A vocation in which a professed knowledge of some department of learning or science is used in its application to the affairs of others or in the practice of an art founded upon it." Oxford English Dictionary. Another definition is: "* * * a vocation founded upon prolonged and specialized intellectual training which enables a particular service to be rendered." Encyc. Soc. Sci., vol. XII, p. 478. "* * * the principal difference between the situation in ancient and mediaeval times was that in the latter the teachers, adminis-

trators, lawyers and physicians had received prolonged formal training and constituted a class apart; and it is this characteristic, the possession of an intellectual technique acquired by special training, which can be applied to some sphere of everyday life, that forms the distinguishing mark of a profession. * * *" Encyc. Soc. Sci., vol. XII, p. 476.

It is appropriate to observe that the curricula of the optometrical schools include not only training in the measurement of the accommodative and refractive states of the human eye and the adaptation of lenses for the correction of visual defects, but also courses in physics, physiology, and pathological conditions of the eye. *Seifert v. Buhl Optical Co.*, 276 Mich. 692, 268 N. W. 784, 786.

"As to optometrists, there seems to be a conflict of authority. Undoubtedly the fitting and sale of eyeglasses began as a trade and not as a profession. There is some support in decided cases for the proposition that it must remain a trade, in which an unlicensed person or a corporation may engage as of right, provided the actual work is done by a skilled servant duly licensed. [Citing cases]

"The considerations to the contrary seem to us more weighty. In recent times abnormalities of the eye, like those of the teeth, have been found sometimes to indicate and often to result in serious impairment of the general health. The work of an optometrist approaches, though it may not quite reach, ophthalmology. The learning and the ethical standards required for that work, and the trust and confidence reposed in optometrists by those who employ them, cannot be dismissed as negligible or as not transcending the requirements of an ordinary trade. We cannot pronounce arbitrary or irrational the placing of optometry on a professional basis. This conclusion finds support in other jurisdictions. State ex rel. Beck v. Goldman Jewelry

Co., 142 Kan. 881, 51 P. (2d) 995, 102 A. L. R. 334, and note. State v. Kindy Optical Co., 216 Iowa, 1157, 248 N. W. 332; Eisensmith v. Buhl Optical Co., 115 W. Va. 776, 178 S. E. 695; Funk Jewelry Co. v. State ex rel. La Prade, 46 Ariz. 348, 50 P. (2d) 945; Bennett v. Indiana State Board of Registration and Examination in Optometry (Ind. Sup.) 211 Ind. 678, 7 N. E. (2d) 977; State ex rel. Harris v. Myers, 128 Ohio St. 366, 191 N. E. 99; State ex rel. Bricker v. Buhl Optical Co., 131 Ohio St. 217, 2 N. E. (2d) 601; Rowe v. Standard Drug Co., 132 Ohio St. 629, 9 N. E. (2d) 609." *McMurdo v. Getter*, 298 Mass. 363, 10 N. E. (2d) 139, 142.

The practice of optometry is undoubtedly one of the subdivisions of the practice of medicine, which have arisen in modern times by reason of the necessity for specialization. It would seem that the public has as much need to be protected from quacks and charlatans in optometry as in dentistry or any other subdivision of medicine. Cf. *Semler v. Oregon State Board of Dental Examiners*, 148 Or. 50, 53, 34 P. (2d) 311. One who consults an optometrist for ocular examination is entitled to the same undivided loyalty that he should receive from a physician. The fact that the optometrist is the employee of an optical concern whose main interest is the sale of optical goods tends to be a distracting influence which may adversely affect his loyalty to the interests of his patient.

"* * * The vice of the situation before us lies in the particular relationship existing between the plaintiff and the corporation and certain circumstances resulting from the arrangement between them. The fact that a considerable part of the compensation received by the plaintiff came from commissions received from the corporation based on the sale of glasses prescribed by him, if such a practice were held generally permissible, would

make it likely, at least in some instances, that the welfare of the patient would not be the sole criterion applied by the optometrist in rendering services to him. Also, because the profit to the store from the arrangement would come entirely from its sale of optical goods, an optometrist under such an arrangement as the one before us, in order to preserve his position with the corporation, might well be tempted to prescribe glasses or more expensive glasses when this would not serve the true interests of the patient. The situation is one where the complete loyalty of an optometrist to his patient is put into serious jeopardy." *Lieberman v. Conn. State B. of Examiners in Optometry*, 130 Conn. 344, 34 A. (2d) 213, 216.

While it is true that an optometrist is not permitted by law to treat diseases of the eye, nevertheless his training enables him to diagnose pathological conditions, and his duty requires him to refer the patient to a practitioner who is qualified to treat such conditions. The fact that he is trained to diagnose pathological conditions in itself indicates that the optometrist is not a mere skilled craftsman or mechanic. His failure to diagnose a pathological condition, with resultant delay or neglect in proper treatment thereof, might result in serious impairment of a patient's eyesight, or even in blindness. *Lieberman v. Conn. State B. of Examiners in Optometry*, supra.

■ It may be conceded that there is conflict of opinion among the courts with reference to the right of a corporation, or of an unlicensed person, to practice optometry through licensed employees. Anno., 102 A. L. R. 343; Anno., 128 A. L. R. 586. The majority rule, however, and that which appeals to us as being based upon the better reasoning, is that they may not do so. *McMurdo v. Getter*, supra, (298 Mass. 363, 10 N. E. (2d) 139, 142); *People by Kerner v. United Med-*

*ical Service*, 362 Ill. 442, 200 N. E. 157, 103 A. L. R., 1229, 1238-9; Anno., 103 A. L. R. 1240, 1241.

The statutes of some of the states either specifically permit corporations or unlicensed persons to employ an optometrist as an adjunct of their business, or have been so construed by the courts. *Georgia State Board, etc., v. Friedmans' Jewelers*, 183 Ga. 669, 189 S. E. 238; *State v. Goodman*, 206 Minn. 203, 288 N.W. 157; *Jaeckle v. Bamberger & Co.*, 119 N. J. Eq. 126, 181 A. 181; *Dvorine v. Castelberg Jewelry Corp.*, 170 Md. 661, 185 A. 562. The Oregon act is not of that type.

It is suggested that the services of the registered optometrist in the case at bar are made available to the customer as a free accommodation, no charge being made therefor. Whether a specific charge is made or not, it is obvious, and indeed it is admitted, that the salary of the optometrist is a part of the corporation's overhead expense and that the money to defray such overhead comes from the business done by the corporation. It is not pretended that the optometrist works for nothing. As a matter of fact, the optometrist in charge of the corporation's store in Klamath Falls testified that he received a salary of $600 a month, which compensation was net to him, as he was not required to pay any part of the expense of operating the store. The various optometrical machines or devices used by the optometrist were the property of the corporation.

The defendant's witnesses protested strenuously that the company did not, in any manner, interfere with the optometrist in the performance of his professional functions, but the whole setup indicates that, while there may have been no direct interference, the professional relationship of the optometrist was subordinated to the corporation's interests. Cf. *State v.*

*Buhl Optical Co.,* 131 Ohio St. 217, 2 N. E. (2d) 601, 604.

Defendant seeks to draw an analogy between optometrists, on the one hand, and skilled craftsmen who are required by law to be licensed, such as plumbers and electricians, on the other. No doubt plumbers, electricians, and other licensed craftsmen, may be employed by corporations. *State v. Buhl,* supra; 13 Am. Jur., Corporations, section 838. The suggested analogy is invalid, however, as the skilled craftsman does not deal in vital or fiduciary relationships.

It is of interest to note that, in the 1945 session of the legislature, there was introduced a bill to permit corporations to carry on the business of optometry. The bill was referred to the Committee on Medicine, Pharmacy and Dentistry, and the House adopted the report of a majority of that committee that the bill should not pass.

Defendant's corporate name is listed in bold-faced type in the Klamath Falls telephone directory under the classification of Optometrists, such bold-faced type listing being accorded to persons or concerns who advertise in the directory. It was testified, however, that the listing was made by the telephone company without the knowledge or consent of the defendant.

The executive offices of the defendant are maintained at Salt Lake City, Utah. At such executive offices a price-list is prepared of all glasses sold by defendant, and each local store is supplied with a copy of such price-list. The optometrist in charge is required to charge the list price for any glasses sold. Each local store employs a young woman as a receptionist, whose salary is paid by the defendant corporation. The optometrist in charge has nothing to do with the store records. He is subject to discharge by the defendant at any time. All prescriptions made by the

optometrist become the property of the corporation. All advertising matter is prepared by and published at the expense of the defendant. The following is a specimen of the kind of advertising used:

Your eyesight should be guarded constantly. Believe it or not, half the people who say, "Nothing wrong with my eyes—I see fine", are astonished to learn they suffer from visual defects*

*Which only a thorough eye-examination can reveal. See registered optometrist here, for a complete check-up NOW.

**Standard's Guaranteed Glasses**
Created by Craftsmen—Factory To You

# NOTHING DOWN
# ONLY $1 A WEEK

No Interest     No Extra     No Red Tape

**Standard**
*Optical Company*

715 MAIN STREET
DR. BYRON FRIEDMAN, REGISTERED OPTOMETRIST IN CHARGE

RADIONIC HEARING AID
MADE BY Zenith Radio Corporation
$40
Complete with crystal microphone, radionic tubes, batteries and battery-saver circuit. One model—one price—one quality—Zenith's finest. No extras—no "decoys."
as easy to adjust as a pair of binoculars!
Investigate this nationwide crusade to lower the cost of hearing. Come in for a demonstration You are the judge of whether you can hear or not. Demand is greater than supply. We sell only to those whom a hearing aid can help. No high pressure salesman will call on you.

$5 DOWN  $5 MONTH
Nothing More To Buy

SERVING THE EYES AND EARS OF THE WEST

This advertisement is skilfully drawn. Its principal feature is advice to the public respecting the importance of ocular examination and the dangers incident to neglect thereof, which feature is used as leverage to promote the sale of glasses through the prescriptions of the "registered optometrist in charge", who is, of course, "in charge" of defendant's store as manager. In our opinion, the whole tenor of the advertisement is cunningly misleading and amounts to a holding out of the defendant as an optometrist. When a customer visits the store seeking an eye-examination, the receptionist refers him to the optometrist, who makes the examination. If eyeglasses appear to be needed, the optometrist makes out a prescription therefor, the original of which is kept in the store while a carbon copy is sent to the Salt Lake City office. Simple lenses are manufactured in the local store; complicated ones at Salt Lake City. The optometrist in charge is instructed to adhere to the defendant's price-list, because, as testified to by the defendant's general manager, "it has been the practice of optometry to charge all the traffic would bear". The majority of patients have their glasses manufactured by defendant. The price of glasses, which includes the hidden charge for the optometrist's work, being fixed by defendant upon the basis of "all the traffic will bear", and the continuation of the optometrist's employment by defendant obviously depending upon his success in selling eyeglasses, it can hardly be said that he is practising his profession with that independence and freedom from extraneous influence which should characterize the work of a professional man.

■ We are of the opinion that the evidence indicates that the defendant corporation has unlawfully en-

gaged in the practice of optometry. *McMurdo v. Getter,* supra (298 Mass. 363, 10 N. E. (2d) 139); *Ezell v. Ritholz,* 188 S. C. 39, 198 S. E. 419; *Ritholz v. Commonwealth,* 184 Va. 339, 35 S. E. (2d) 210; *Rowe v. Standard Drug Co.,* 132 Ohio St. 629, 9 N. E. (2d) 609, 614, 615; *Ritholz v. Johnson,* 246 Wis. 422, 17 N. W. (2d) 590; *Rowe v. Burt's, Inc.,* (Ohio) 31 N. E. (2d) 725; *Lieberman v. Conn. State B. of Examiners in Optometry,* supra (130 Conn. 344, 34 A. (2d) 213); *Ritholz v. Arkansas State Board of Optometry,* 206 Ark. 671, 177 S. W. (2d) 410; *Kendall v. Beiling,* 295 Ky. 782, 175 S. W. (2d) 489, 490; *State ex rel. Standard Optical Co. v. Supr. Ct.,* supra (17 Wash. (2d) 323, 135 Pac. (2d) 839); *State ex rel. Beck v. Goldman Jewelry Co.,* supra (142 Kan. 881, 51 P. (2d) 995).

Defendant concedes that it has advertised that there was available at its store a registered optometrist who would examine the eyes of any prospective customer and determine by mechanical means any visual defect. It argues that it is inconceivable to contend that it thereby held itself out as an optometrist. A similar argument was made and rejected in *Basford v. Department of Registration and Education,* 390 Ill. 601, 62 N. E. (2d) 462, a case involving the unlawful practice of dentistry by a corporation.

We are of the opinion that the trial court erred in dismissing the proceeding. In our opinion, the evidence established the fact that the defendant corporation, not being a licensed optometrist, has practiced optometry in the State of Oregon unlawfully.

■ While the statute under which the present proceeding was instituted designates the proceeding as an action at law, this court has intimated that it is in truth a mere statutory proceeding for the exercise of

the equitable right to determine whether or not a corporation's franchise is being exercised legally. *State ex rel. v. School District No. 9,* 148 Or. 273, 286, 31 P. (2d) 751, 36 P. (2d) 179. The statute does not make forfeiture imperative, and plaintiff concedes that the court, in finding against defendant, is not without discretion as to whether or not to enter judgment of complete ouster. In our opinion, a dissolution of the corporation is not required under the facts of the case. The judgment appealed from is reversed, without costs, and the cause is remanded with directions to enter judgment and decree enjoining the defendant from engaging directly or indirectly in the practice of optometry, as set forth in this opinion, and especially from the doing of any act or acts which constitute the practice of optometry in Oregon as defined by statute. *State ex rel. Beck v. Goldman Jewelry Co.,* supra (142 Kan. 881, 51 P. (2d) 995, 1001); *State v. Buhl Optical Co.,* 131 Ohio St. 217, 2 N. E. (2d) 601, 604.