ANNA MARIE DEYETTE *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Essex. March 3, 1937. — March 30, 1937.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Agency*, What constitutes. *Negligence*, Imputed. *Motor Vehicle*, Operation.

Findings were warranted that the owner of an automobile, who had bought it on an understanding with her son that he would drive and maintain it and could use it whenever he pleased, had surrendered the right to control it to him at the time of an accident occurring while she was riding in it, and that the relationship of principal and agent did not exist between them; and a ruling was not required that his negligence contributing to the accident must be imputed to her.

TORT. Writ in the Superior Court dated October 13, 1933.

At the trial before *Baker*, J., there was a verdict for the plaintiff in the sum of $2,000. The defendant alleged exceptions.

*J. F. Doyle*, for the defendant.

*E. S. Underwood*, for the plaintiff.

PIERCE, J. This is an action of tort, in which the plaintiff seeks to recover damages for personal injuries sustained by her and damage to her automobile in which she was

riding when it collided with a bus of the defendant company in Wilmington, Massachusetts.

At the close of the evidence the defendant seasonably requested the judge to rule as follows: "1. Upon all the evidence the plaintiff was in the legal control of the automobile in which she was riding at the time of the accident. 2. If the jury find that the operator of the automobile in which the plaintiff was riding was negligent and that such negligence contributed in a material degree to cause the accident the plaintiff is not entitled to recover." "4. On all the evidence in this case any negligence of the operator of the plaintiff's automobile is imputable to the plaintiff." These requests were denied and the defendant duly excepted.

The evidence relating to the negligence of the defendant, and the due care of the plaintiff and of the operator of her automobile is not contained in the bill of exceptions; these questions, therefore, are not before this court. The only question now before this court is whether the trial judge on the evidence shown in the bill of exceptions erred in refusing to give the defendant's requests for rulings.

The evidence in its aspect most favorable to the plaintiff discloses that the plaintiff owned the automobile which was in collision with the defendant's bus; that the operator of the automobile at the time of the occurrence of the accident which resulted in the plaintiff's injuries was her son, John, then more than twenty-one years of age. The evidence warranted the jury in finding that the plaintiff did not operate automobiles, that she bought the automobile in question with the understanding that John would drive and maintain it; that maintaining it he would have the privilege of using it whenever he pleased; that on the day of the accident he told his mother that he would like to use it; that he and a young lady had planned to take another friend to Lincoln, Massachusetts, to the friend's place of employment; that he invited the plaintiff to ride with him; that when he first planned to go he did not plan to take his mother and he had no particular destination except to go to Lincoln, which was to be his final destination, but he did not go there directly; that his mother sat

in the front seat with him; that they rode to New Hampshire; that while in New Hampshire in the neighborhood of some friends of the plaintiff, he asked her if she would like to stop at the friends' house; that they did so for a few minutes and then proceeded in the general direction of Lincoln, Massachusetts; and that they were on their way there, in Wilmington, Massachusetts, when the accident occurred.

On cross-examination the son testified, in substance, that he had learned before the trial that it might be important to his mother's case whether he was in control of the automobile; that he had talked this over with the lawyers in the case; that he had told them, "my mother owns the car"; that "she bought it and paid for it but I was boss of it that day"; "that his mother rode with him on the front seat"; that his mother did not know how to drive an automobile; that his mother never gave any suggestions as to driving, though he would take suggestions from her if she gave them; that as he drove the automobile that day he would obey his mother if she spoke to him, and if she told him to go slow he would go slow, and if she wanted to visit some one he would have to go. The son further testified as follows: "he went to the house of a friend of his mother's on that day in New Hampshire, but not because she told him to go there; that his mother usually rides in the front seat and she did so on this day during the entire trip. That he went with his mother when she bought the car and that she knew nothing about cars to speak of, that he advised her about the type and style of car to buy. That his mother worked all the week in a shoe factory and that Sunday, the day of the accident, was Mother's Day. That his mother did not always wish to go riding on Sundays, that it would be for her to say whether or not she wished to go or not, that she did not wish to go on this day until the witness asked her, that it was in Kingston, New Hampshire, that they visited people who were friends of the witness's mother; that he did not see the bus of the defendant until his mother cried out a warning cry; that his mother was the only one that got out of the car to

visit the people in New Hampshire and that he waited for her until she came out. The witness further testified that he spent about $55 that spring before the accident having the car overhauled; that he bought the oil and gas for the car and that he washed and cleaned it and took care of it that way and did all the work on it."

The evidence from the plaintiff was substantially as follows: "that she happened to go with her son on that day as he was taking his friend to work"; that the son asked the plaintiff if she would like to go along; that he had the use of the automobile whenever he wanted it, and maintained it; that she had bought it herself two years before; that she did not know what routes he was going to take that day; that "after a little while" "she did know" and "she learned during the trip that they were near some friends of hers in New Hampshire"; that her son "suggested that they were near" the friends' house and asked her if she would like to stop, and she said she would. After some testimony to the effect that "she had sort of abdicated control of the" automobile, the witness finally left it that, if she had seen anything wrong, she would have spoken and the son would have minded her and that he would have followed her directions in regard to going along certain streets or in regard to the speed of the automobile.

It is the contention of the defendant that on any view of the above evidence the plaintiff, as matter of law, had the right to control the automobile in which she was riding; that therefore the relationship of master and servant existed; and that the requests were applicable to the evidence.

It is true, as a general rule of law, that the test of the existence of the relationship of master and servant is the right of control and not the actual exercise of control. *Khoury* v. *Edison Electric Illuminating Co.* 265 Mass. 236, 238. *Reardon* v. *Coleman Bros. Inc.* 277 Mass. 319, 322. *Marsh* v. *Beraldi*, 260 Mass. 225, 231. *Foley* v. *Hurley*, 288 Mass. 354, 356. But the jury could find on the evidence that the mother "bought the automobile with the understanding that . . . [the son] would drive and maintain the car, and that with maintaining it he would have the

Mass.] WALENZ *v.* ALCOHOLIC BEVERAGES CONTROL COM. 133

privilege of using it whenever he pleased"; and that on the day of the accident the plaintiff had surrendered to her son the control of the automobile in which she was riding. *Wheeler* v. *Darmochwat*, 280 Mass. 553, 558. *Guy* v. *Union Street Railway*, 289 Mass. 225, 229, 230.

The case was rightly submitted to the jury.

*Exceptions overruled.*