RAYMOND McMURDO *vs.* JOHN R. GETTER & another.

Worcester. April 8, 1937. — September 20, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

. *Optometry.* *Constitutional Law*, Police power. *Agency.*

It is a proper exercise of the police power to regulate the practice of optometry on the basis that it is a profession.

A firm of persons, not physicians nor registered optometrists, who prepared and sold eyeglasses upon prescription of a physician, not registered as an optometrist, employed by them as their servant, were practising optometry in violation of G. L. c. 112, §§ 66–73, as appearing in St. 1934, c. 339, § 2.

BILL IN EQUITY, filed in the Superior Court on December 14, 1936.

The suit was reported without decision by *Burns*, J., upon the pleadings and an agreed statement of facts.

*H. N. Silk*, (*M. O. Talent* with him,) for the plaintiff.

*G. B. Lourie*, for Albert Barker, intervener.

*R. S. Bernard*, for the defendants.

*P. A. Dever*, Attorney General, & *M. M. Goldman*, Assistant Attorney General, by leave of court, submitted a brief as *amici curiae*.

*J. B. Jacobs* & *H. Singer*, by leave of court, submitted a brief as *amici curiae*.

LUMMUS, J. The plaintiff, a duly registered optometrist practising in Spencer, brought this bill "for his own benefit, for the benefit of other optometrists, and for the benefit of the public," to restrain the defendants, a firm of opticians in Worcester not physicians nor registered optometrists, from practising optometry in competition with the plaintiff and other optometrists without being registered under the statute. Another duly registered optometrist practising in Worcester was admitted as an intervening party plaintiff. The case was reported to us on agreed facts, without decision.

No question is made of the right of the plaintiff and the intervener to relief if the defendants are practising optometry illegally. *Steinberg* v. *McKay*, 295 Mass. 139, 142, and cases cited. *Eisensmith* v. *Buhl Optical Co.* 115 W. Va. 776. See also *Frost* v. *Corporation Commission of Oklahoma*, 278 U. S. 515, 521.

The defendants offer for public sale eyeglasses, including frames and lenses, designed to correct defective vision, upon prescription by physicians and optometrists duly registered as practitioners in this Commonwealth. But almost all the prescriptions actually filled are those issued by a physician employed at a weekly salary by the defendants in their place of business. A customer who desires eyeglasses is taken to the physician, who examines the eyes and prescribes eyeglasses if needed. Other employees of the defendants assist the customer in selecting the shape and style of frames desired, grind and fit the lenses in accordance with the prescription of the physician, and then adjust the finished eyeglasses to the eyes of the customer. We conclude that the physician is the servant of the defendants (*Stuart* v. *Sargent*, 283 Mass. 536, 541), notwithstanding the fact that the defendants actually exercise no control over "the mode, manner or result of the examination of the eyes of the customer and the doctor is left free to exercise his own will . . . [and] judgment and to use his own professional skill and methods in making such examination." *McDermott's Case*, 283 Mass. 74, 77. *Deyette* v. *Boston Elevated Railway*, 297 Mass. 129, 132. All ques-

tions of price and business policy are determined by the defendants. The customer pays nothing except a fixed price for the eyeglasses, which is the same whether he brings in his own prescription or obtains one from the physician employed by the defendants. That price is retained in whole by the defendants.

The defendants contend that they are not practising optometry illegally, although they are not registered optometrists and yet reap all the financial reward of a practice conducted by their servant who is a physician and as such entitled to practise optometry without registration.

The statute (G. L. [Ter. Ed.] c. 112, §§ 66–73, as amended by St. 1934, c. 339, § 2) defines the practice of optometry as "the employment of any method or means, other than the use of drugs, for the diagnosis of any optical defect, deficiency or deformity of the human eye, or visual or muscular anomaly of the visual system, or the adaptation or prescribing of lenses, prisms or ocular exercises for the correction, relief or aid of the visual functions." § 66. Before being registered as an optometrist, a person must possess certain educational qualifications and must pass an examination. § 68. "Whoever, not being lawfully authorized to practice optometry, practices optometry, or holds himself out as a practitioner of, or as being able to practice, optometry, . . . or violates any other provision of" §§ 66–73, inclusive, "or any rule or regulation made under authority thereof," is punishable criminally. § 72A. The restrictions of the statute "shall not apply to physicians and surgeons lawfully entitled to practice medicine in the commonwealth," nor to persons who merely fill prescriptions, or sell eyeglasses as merchandise from permanently located and established places of business without the purpose of correcting defective vision. § 73. Two other exceptions are mentioned later in this opinion. See also St. 1937, c. 287, which takes effect on January 1, 1938.

The Fourteenth Amendment to the Federal Constitution and arts. 1, 10, and 12 of the Declaration of Rights of the Constitution of this Commonwealth, protect every person in the enjoyment of his liberty and property. Within those

words is included the right to engage in any lawful occupation (*Holcombe* v. *Creamer*, 231 Mass. 99, 108, 109; *Lawrence* v. *Board of Registration in Medicine*, 239 Mass. 424, 428; *Matter of Sleeper*, 251 Mass. 6, 19; *Opinion of the Justices*, 271 Mass. 598, 601; *Truax* v. *Raich*, 239 U. S. 33), at least any not "affected with a public interest." *Burgess* v. *Mayor & Aldermen of Brockton*, 235 Mass. 95, 102. *Opinion of the Justices*, 247 Mass. 589. *Liggett Drug Co. Inc.* v. *License Commissioners of North Adams*, 296 Mass. 41, 51. *Chas. Wolff Packing Co.* v. *Court of Industrial Relations of Kansas*, 262 U. S. 522. *Tyson & Brother-United Theatre Ticket Offices, Inc.* v. *Banton*, 273 U. S. 418. *Nebbia* v. *New York*, 291 U. S. 502, 531 *et seq.*, 552 *et seq.* But that right, like many others, may be qualified or restricted under the police power, — the broad power, never precisely delimited, to take rational action for the protection of the public safety, health, morals, comfort and good order. *Commonwealth* v. *Beaulieu*, 213 Mass. 138. *Commonwealth* v. *Libbey*, 216 Mass. 356, 358. *Holcombe* v. *Creamer*, 231 Mass. 99, 109. *Nebbia* v. *New York*, 291 U. S. 502, 527, 528. Where the interests of the public might be endangered by the activities of incompetent or unreliable persons, one may be required to show his qualifications before engaging in a particular occupation and to obtain a license attesting his skill and character. *Commonwealth* v. *Plaisted*, 148 Mass. 375, 382. *Commonwealth* v. *Roswell*, 173 Mass. 119. *Commonwealth* v. *Beaulieu*, 213 Mass. 138. *Commonwealth* v. *McGann*, 213 Mass. 213, 216. *Kilgour* v. *Gratto*, 224 Mass. 78, 81. *Commonwealth* v. *Slocum*, 230 Mass. 180, 190. *Opinion of the Justices*, 282 Mass. 619, 626, 627. *General Outdoor Advertising Co. Inc.* v. *Department of Public Works*, 289 Mass. 149, 189. *Nebbia* v. *New York*, 291 U. S. 502, 528.

The requirement of license or permit before engaging in practice has been held constitutional as to physicians (*Lawrence* v. *Board of Registration in Medicine*, 239 Mass. 424; *Davis* v. *Board of Registration in Medicine*, 251 Mass. 283; *Crane* v. *Johnson*, 242 U. S. 339; *McNaughton* v. *Johnson*, 242 U. S. 344), dentists (*Graves* v. *Minnesota*, 272 U. S. 425), and optometrists. *Commonwealth* v. *Houten-*

*brink,* 235 Mass. 320.    *Commonwealth* v. *S. S. Kresge Co.*
267 Mass. 145.    *Roschen* v. *Ward,* 279 U. S. 337.    *Sage-*
*Allen Co. Inc.* v. *Wheeler,* 119 Conn. 667; *S. C.* 98 Am. L. R.
897, and note.

Sometimes a statute has purported to require on the part
of the proprietor of a business a license attesting skill in
acts which he does not perform, but causes to be performed
on his behalf by a duly qualified and licensed servant.    In
*Louis K. Liggett Co.* v. *Baldridge,* 278 U. S. 105, a statute
of Pennsylvania forbade a partnership or corporation to
operate a pharmacy unless all the partners or stockholders
were licensed pharmacists.    It was held that the require-
ment of ownership by registered pharmacists had no legiti-
mate relation to the health or interests of the public, and
that the statute deprived the corporation of its property
without due process of law.    See also *Wyeth* v. *Cambridge*
*Board of Health,* 200 Mass. 474; *Burke* v. *Holyoke Board of*
*Health,* 219 Mass. 219; *Schnaier* v. *Navarre Hotel & Im-*
*portation Co.* 182 N. Y. 83; *People* v. *Ringe,* 197 N. Y. 143;
*Wm. Messer Co.* v. *Rothstein,* 129 App. Div. (N. Y.) 215;
*New State Ice Co.* v. *Liebmann,* 285 U. S. 262, 278.    Such
instances are to be distinguished from those in which, for
sufficient reason, a license has been required from the propri-
etor of a business, attesting his fitness to carry it on.    *Com-*
*monwealth* v. *McCarthy,* 225 Mass. 192.    *Bronold* v. *Engler,*
194 N. Y. 323.

A different rule has been applied to the learned profes-
sions.    These are characterized by the need of unusual
learning, the existence of confidential relations, the adherence
to a standard of ethics higher than that of the market place,
and in a profession like that of medicine by intimate and
delicate personal ministration.    Traditionally, the learned
professions were theology, law and medicine; but some
other occupations have climbed, and still others may climb,
to the professional plane.    *United States* v. *Laws,* 163 U. S.
258.    Dentistry, a branch of medicine, has done so within
modern times.    Professional men may be held to a higher
ethical code, for example by the restriction of advertising,
than men engaged in ordinary business.    *Matter of Cohen,*

261 Mass. 484. *Semler* v. *Oregon State Board of Dental Examiners*, 294 U. S. 608.

The rule is generally recognized that a licensed practitioner of a profession may not lawfully practise his profession among the public as the servant of an unlicensed person or a corporation; and that, if he does so, the unlicensed person or corporation employing him is guilty of practising that profession without a license. A corporation as such cannot possess the personal qualities required of a practitioner of a profession. Its servants, though professionally trained and duly licensed to practise, owe their primary allegiance and obedience to their employer rather than to the clients or patients of their employer. The rule stated recognizes the necessity of immediate and unbroken relationship between a professional man and those who engage his services. It was applied recently in this Commonwealth in the case of lawyers. The judicial branch of government to which is entrusted the regulation of practice by attorneys at law, has never relaxed the rule. *Opinion of the Justices*, 289 Mass. 607, 613, 614. *Matter of Maclub of America, Inc.* 295 Mass. 45. *Matter of Shoe Manufacturers Protective Association, Inc.* 295 Mass. 369. *Matter of Thibodeau*, 295 Mass. 374. In the absence of statutory modification in favor of hospitals or others (*People* v. *John H. Woodbury Dermatological Institute*, 192 N. Y. 454; *Dickson* v. *Flynn*, 246 App. Div. [N. Y.] 341), the same rule applies to physicians and dentists. *People* v. *United Medical Service, Inc.* 362 Ill. 442; *S. C.* 103 Am. L. R. 1229, and note. *Semler* v. *Oregon State Board of Dental Examiners*, 294 U. S. 608, 611. *State* v. *Baker*, 222 Iowa, 903. The position of a physician normally is not that of a servant of anyone. *Pearl* v. *West End Street Railway*, 176 Mass. 177. *Metzger* v. *Western Maryland Railway*, 30 Fed. (2d) 50. *Daly's Astoria Sanatorium, Inc.* v. *Blair*, 161 Misc. (N. Y.) 716. See also *Israel* v. *Sommer*, 292 Mass. 113, 121.

As to optometrists, there seems to be a conflict of authority. Undoubtedly the fitting and sale of eyeglasses began as a trade and not as a profession. There is some support in decided cases for the proposition that it must

remain a trade, in which an unlicensed person or a corporation may engage as of right, provided the actual work is done by a skilled servant duly licensed. *Dvorine* v. *Castelberg Jewelry Corp.* 170 Md. 661. *Jaeckle* v. *L. Bamberger & Co.* 119 N. J. Eq. 126, affirmed 120 N. J. Eq. 201. *State* v. *Gate City Optical Co.* 339 Mo. 427. *Georgia State Board of Examiners in Optometry* v. *Friedmans' Jewelers Inc.* 183 Ga. 669. See also *Sage-Allen Co. Inc.* v. *Wheeler*, 119 Conn. 667; *S. C.* 98 Am. L. R. 897.

The considerations to the contrary seem to us more weighty. In recent times abnormalities of the eye, like those of the teeth, have been found sometimes to indicate and often to result in serious impairment of the general health. The work of an optometrist approaches, though it may not quite reach, ophthalmology. The learning and the ethical standards required for that work, and the trust and confidence reposed in optometrists by those who employ them, cannot be dismissed as negligible or as not transcending the requirements of an ordinary trade. We cannot pronounce arbitrary or irrational the placing of optometry on a professional basis. This conclusion finds support in other jurisdictions. *State* v. *Goldman Jewelry Co.* 142 Kans. 881; *S. C.* 102 Am. L. R. 334, and note. *State* v. *Kindy Optical Co.* 216 Iowa, 1157. *Eisensmith* v. *Buhl Optical Co.* 115 W. Va. 776. *Funk Jewelry Co.* v. *State*, 46 Ariz. 348. *Bennett* v. *Indiana State Board of Registration & Examination in Optometry*, 211 Ind. 678. *State* v. *Myers*, 128 Ohio St. 366. *State* v. *Buhl Optical Co.* 131 Ohio St. 217. *Rowe* v. *Standard Drug Co.* 132 Ohio St. 629.

Although the statute does not show an uncompromising determination to apply purely professional standards to optometrists, we think that they are in effect placed on a professional plane. A certificate of registration may be revoked for "unprofessional conduct" (§ 71), although the statute speaks of an "optometric practice or business." The general principle is recognized that there should be direct professional relations between an optometrist and the members of the public who engage his services. Section 72 declares that "No optometric practice or business

. . . shall be conducted under any name other than that of the optometrist or optometrists actually conducting such practice or business." That provision, unless this case falls within some exception to it, makes illegal what was done in this case. It prohibits, as a general rule, the practice of optometry by a layman or a corporation through servants who are registered optometrists. The exceptions tend to show the existence of the general rule, for if the rule were not recognized the exceptions need not have been expressed. One exception relates to the continuance of an optometric practice by the unregistered spouse of a registered practitioner. § 73. Another is that the statute shall not "prevent the employment by any person of a registered optometrist to be in charge of, or practice optometry in, an optical department conducted by such person." § 73. The servant employed in this case did not come within that exception, for he was a physician, not a registered optometrist. It is true that a physician may practise optometry. § 73. But when it comes to practising optometry as the servant of a layman or a corporation, the Legislature may rationally have thought that a physician who would accept employment in an optical department would not be likely to equal a registered optometrist in skill in the narrow field of optometry. A competent physician could bring himself within the exception by obtaining registration as an optometrist. § 73. We think that upon the agreed facts the defendants are practising optometry without right.

On the agreed facts there must be a decree restraining the defendants from practising optometry, either personally or by any servant or employee, unless and until they shall become lawfully entitled to do so, and in that event from practising optometry, either personally or by any servant or employee, except as they may be lawfully entitled to do so; with costs against them.

*Ordered accordingly.*