Louis A. Kronholtz et al. *v.* Connecticut State
Board of Examiners in Optometry

Superior Court     Fairfield County     File No. 70100
AT Bridgeport

Memorandum filed April 8, 1959

*Marsh, Day & Calhoun,* of Bridgeport, for the plaintiffs.

*Danaher, Lewis & Tamoney,* of Hartford, *Albert L. Coles,* attorney general, and *Raymond J. Cannon,* assistant attorney general, for the defendant.

ROBERTS, J. This in an action returnable on the first Tuesday of March, 1945, seeking a declaratory judgment and equitable relief. The plaintiffs are Louis A. Kronholtz and the Michaels brothers, the latter being copartners doing business as Michaels and Company. The defendants were the then members of the Connecticut state board of examiners in optometry and now, by stipulation, the present members of the board.

The question of jurisdiction of this court to hear and determine the issues in this action was raised by a plea to the jurisdiction which was heard and determined immediately prior to the trial of the facts. It was decided this court has jurisdiction, as appears by the memorandum of decision filed October 17, 1958. An answer was filed to the complaint in this action admitting a number of the allegations and denying the remainder. Evidence was offered by the parties at the trial. The facts necessary to decide the issues are in a large measure undisputed.

Michaels and Company is a partnership conducting a store in Bridgeport, Connecticut, selling jewelry, silver, china, glassware, eyeglasses and other merchandise. It maintains, in the operation of this store, an optometrical department and employs the plaintiff Louis A. Kronholtz, who is in charge of the optometrical office in this department. Michaels and Company also employs an optician. Michaels and Company owns all the equipment used by both the plaintiff Louis A. Kronholtz and the optician. The plaintiff Louis A. Kronholtz has been a licensed optometrist in Connecticut since 1919 and has been employed by Michaels and Company as such in Bridgeport since 1944. He is paid a salary and receives no commission from the sale of glasses. In the operation of the optometrical department, the plaintiff Kronholtz makes eye examinations, writes prescriptions for glasses and performs the usual services of an optometrist. The charge for the examination is $5 and is paid to Michaels and Company. The prescriptions, where found to be necessary, may be filled anywhere, but the majority are filled in the optical department of Michaels and Company, and all payments therefor, by credit or cash, are made to Michaels and Company. This brief summary of facts, with such other facts as may be mentioned later in this memorandum, is sufficient for

discussion of the law concerning the issues in this case.

The issues pursued in briefs and argument are based upon the following prayers for relief: (1) A declaratory judgment determining whether or not it is "unprofessional conduct," as prescribed in § 1018e of the 1939 Cumulative Supplement to the General Statutes (Rev. 1958, § 20-133) for the plaintiff Louis A. Kronholtz to practice his profession in charge of the optometrical office of the plaintiff Michaels and Company; (2) a declaratory judgment determining whether or not the legislature could constitutionally delegate to the defendant board the power to make such a regulation as said board has adopted; (3) a declaratory judgment determining the rights of the plaintiff Louis A. Kronholtz in connection with practicing optometry under a contract of employment by a firm or corporation. The fourth prayer for relief seeks a declaratory judgment determining whether the statutory provisions relating to the selection of the members of the state board of examiners and the power vested in said board to revoke or suspend the license of an optometrist are valid and constitutional. This claim has not been discussed or pursued in the briefs of the plaintiffs. Furthermore, the portion of the claim relating to the selection of the members of the board appears to have now been disposed of by amendment to the statutes (see Rev. 1958, § 20-128, with reference to § 4-10), and the remainder of the claim has been sufficiently passed upon by the cases already decided. The court will therefore not discuss it.

The brief submitted by counsel for the plaintiffs states: "The issue in this case is whether the operation of an optometrical office in the store of Michaels & Company by plaintiff, Louis A. Kronholtz, under employment by Michaels & Company constitutes unprofessional conduct on his part."

Although the principal issue is that as now stated and claimed by the plaintiffs' counsel in their brief, it appears to the court that the prayers for relief involve a somewhat broader scope and that certain matters which may be termed preliminary or ancillary to the main issue, which have been discussed in the briefs, especially those of the defendants, should, particularly in an action of this type, be discussed and commented upon by the court.

Before entering upon a discussion of the issues, it may be well for convenience' sake to mention the principal sections of the statutes which will be referred to herein, as they appear in the several revisions. Some of these have been changed and such of the changes as become material to this case will be mentioned hereafter in this memorandum. Examining board—Cum. Sup. 1935, § 1154c; Rev. 1949, § 4489; Rev. 1958, § 20-128. Qualifications for practice—Cum. Sup. 1939, § 1017e; Rev. 1949, § 4491; Rev. 1958, § 20-130. Grounds for revocation or suspension of license—Cum. Sup. 1935, § 1155c; Cum. Sup. 1939, § 1018e; Rev. 1949, § 4494; Rev. 1958, § 20-133.

One of those matters, referred to above as ancillary, is whether or not the practice of optometry is a profession. It would appear that the legislature has recognized it as such because in § 4489 (b) of the 1949 Revision (as amended, Rev. 1958, § 20-128 [b]) it is provided, in prescribing the duties of the state board of examiners in optometry, in part as follows: "Said board shall make such rules and regulations, not inconsistent with law, as may be necessary to govern the practice of optometry as a profession . . . ." The Supreme Court of Errors, in *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, 679, in discussing the sections of the statutes dealing with the grounds upon which a license of

optometry may be revoked, and apparently particularly with the provisions (Rev. 1949, § 4494 [b]) concerning "immoral, fraudulent, dishonorable or unprofessional conduct" and (§ 4494 [c]) "illegal or incompetent or habitually negligent or unprofessional conduct in the practice of his profession," spoke as follows: "The words must have been used in the light of the fundamental purpose of the statutes to regulate the profession in the public interest, and they can only be construed as intending to include conduct within their fair purport which either shows that the person guilty of it is intellectually or morally incompetent to practice the profession or has committed an act or acts of a nature likely to jeopardize the interest of the public. So construed, they vest in the board a power it may properly exercise. . . . In furtherance of its general purpose and to carry out the details of its plan of regulation, the Legislature could properly vest the board with power to make regulations reasonably adapted to assure the competency of optometrists and to prevent conduct on their part which would tend to do harm to the public." Again the Supreme Court, in *Lieberman* v. *Board of Examiners in Optometry,* 130 Conn. 344, 349, refers to the practice of optometry as a profession, wherein it is stated: "Still, in view of the recognized character which the former profession [practice of optometry] has today, there are certain fundamental requirements common to both [practice of optometry and practice of a physician]."

It would therefore seem safe to assume that the court in the *Lieberman* case, supra, as well as in the *Sage-Allen* case, supra, recognized the practice of optometry as a profession. It is especially so when, in its discussion in the *Lieberman* case of the subject in general, citations and in some instances quotations were made from *Ezell* v. *Ritholz,* 188 S.C. 39,

51; *Rowe* v. *Burt's, Inc.,* 17 Ohio Op. 1, 3; *McMurdo* v. *Getter,* 298 Mass. 363; and *Neill* v. *Gimbel Bros., Inc.,* 330 Pa. 213. These cited cases, and particularly the *McMurdo* case, in which opinion cases from other jurisdictions are cited, appear to adopt the majority view that the practice of optometry is a profession. From this and considering the position optometry is commonly recognized to occupy in modern society today and also since the legislature has prescribed rules to govern its practice which have been strengthened from the earlier days, the court concludes that the practice of optometry should be treated as a profession.

The court will now consider whether or not it is "unprofessional conduct" for the plaintiff Kronholtz to practice his profession while in the employ of Michaels and Company and in charge of their optometrical office, as more particularly set forth in paragraph 1 of the plaintiffs' prayers for relief in the complaint and as the issue stated in plaintiffs' brief. The discussion and holding under this phase of the case will be confined to the provisions of § 4494 of the 1949 Revision (Rev. 1958, § 20-133), previously § 1018e of the 1939 Cumulative Supplement, providing for revocation, suspension or annulment of license for (subsection [b]) "immoral, fraudulent, dishonorable or unprofessional conduct" and (subsection [c]) "illegal or incompetent or habitually negligent or unprofessional conduct in the practice of his profession." And for the sake of this discussion the court finds from the evidence that the board was about to hear a complaint relative to revoking or suspending his license, in which complaint the inspector for said board charged the plaintiff in part with "unprofessional conduct" because of his employment relationship with the plaintiff Michaels and Company. The complaint in the instant case is sufficient to raise the issue now being considered.

In the *Lieberman* case, supra, 346, the Supreme Court, in quoting from the *Sage-Allen* case cited above, said in part as to the words "immoral . . . dishonorable or unprofessional conduct": "The words . . . can only be construed as intending to include conduct within their fair purport which either shows that the person guilty of it is intellectually or morally incompetent to practice the profession or has committed an act or acts of a nature likely to jeopardize the interest of the public."

The evidence and circumstances of this case do not show the conduct of the plaintiff Kronholtz to have been such as would indicate that he was intellectually or morally incompetent to practice the profession of optometry. He has practiced for many years, conducting examinations and issuing prescriptions in the usual way, and nothing has been shown about his conduct to violate the above. The court cannot find that he has committed an act or acts of a nature likely to jeopardize the interest of the public within the meaning of the above definition as applying to unprofessional conduct. The fact that he was employed by the plaintiff Michaels and Company for a fixed salary is not such an act, in the opinion of the court, under the circumstances as disclosed in this case. He received no fees or commissions from the sale of glasses and there is no question as to advertising, as in the *Lieberman* case, supra. The evidence does not disclose any issue as to advertising at a fixed price, as in the *Sage-Allen* case, supra. The fact that Kronholtz's employer, Michaels and Company, received a profit from the sale of glasses as a result of filling some of the prescriptions he wrote presents a situation, as the court views it, no different from the usual custom of many optometrists in the state, as appears from the evidence, who after writing the prescriptions also procure the required glasses for the respective pa-

tients and make a profit therefrom. In fact this appears to be the practice of one of the present members of the board who testified as a witness in the case. The board apparently does not consider this latter to be unprofessional conduct. If the mere fact of employment were to be considered as unprofessional, then the employment by a hospital, for a salary, of one of the medical profession as pathologist, x-ray specialist or anesthetist, as is a common practice in Connecticut, would be unprofessional.

The court therefore concludes under the circumstances of this case that it should not be construed as unprofessional conduct under the above provisions of the statute for the plaintiff Kronholtz to practice his profession of optometry while in the employ of the plaintiff Michaels and Company and in charge of their optometrical office.

This decides the principal issue raised by the plaintiffs. It seems to the court, however, as indicated previously in this memorandum, that the scope of the inquiry is somewhat broadened under the pleadings and raises other questions pursued in the briefs of the defendants which should, under the circumstances, be discussed. Among these questions is the claim of the defendants as to the effect of the provision in § 4494 of the 1949 Revision (Rev. 1958, § 20-133) that "[n]o person except a licensed optometrist shall operate an optometrical office."

Before entering upon a discussion of this claim, it should be observed that § 4491 of the 1949 Revision (Rev. 1958, § 20-130) provides for the qualifications of an optometrist and requires an examination to become one. It necessarily follows that a partnership, like a corporation, cannot be licensed. The plaintiff Michaels and Company is not in fact li-

censed to practice optometry. "Not only was the corporation not licensed to practice optometry, but under our statutes it could not be." *Lieberman* v. *Board of Examiners in Optometry,* 130 Conn. 344, 352; see also by analogy *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 234.

The statute in effect when *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, was decided contained the provision as follows: "Nothing herein contained shall prohibit the operation in a department store of an optical department under the supervision of a duly licensed optometrist." Rev. 1935, § 1155c. By an amendment to the section enacted in 1939, for this sentence the following was substituted: "No person except a licensed optometrist shall operate an optometrical office." Cum. Sup. 1939, § 1018e (Rev. 1958, § 20-133). The court in the *Lieberman* case, supra, 348, in commenting on this change, said: "It is not easy to determine the purpose designed to be accomplished by this amendment, but we need not consider that question in its broad aspects." It would thus appear that the Supreme Court, while commenting on this provision, did not decide the full import of the meaning of this change in the statute.

The parties have offered in evidence copies of a number of bills which have been introduced in several sessions of the legislature since the above 1939 enactment. Some of these purported to strengthen the plaintiffs' claims and others the defendant's claims. They failed of passage. It is unfortunate the legislature has not seen fit to more clearly define the rights and duties concerning optometry, as it has done, for instance, concerning dentistry. Rev. 1958, §§ 20-121, 20-122, 20-123.

In considering the term "operate," it is found "[t]he word 'operate' has varying meanings according to the context." 67 C.J.S. 502. Webster, New

International Dictionary (2d Ed.), defines "operate": "To put into, or to continue in, operation or activity; to manage; to conduct; to carry out or through . . . ." This definition was adopted in *Commonwealth* v. *Babb,* 166 Pa. Super. 63, 67 n. "'Operate' [means] to 'produce an effect, to cause to effect, to bring about.'" *Daniel* v. *State Farm Mutual Ins. Co.,* 233 Mo. App. 1081, 1091; see 29 Words & Phrases (1959 Sup.). With the above definitions in mind and considering the facts of this case, the court would construe that the plaintiff Michaels and Company was actually operating the optometrical office within the intent of the above-quoted provision of § 4494 of the 1949 Revision (Rev. 1958, § 20-133). And of course such plaintiff, as pointed out above, is not a licensed optometrist. This interpretation is not free from doubt but does express the opinion of this court on this subject.

This then leads to a discussion of another provision of § 4494 of the 1949 Revision (Rev. 1958, § 20-133), being subdivision (e) thereof, which provides as follows: ". . . aiding or abetting the practice of optometry by an unlicensed person or a person whose license has been suspended or revoked." The plaintiff Kronholtz is employed by Michaels and Company and is practicing optometry in a department of the store owned and operated by the plaintiff Michaels and Company. It may be that the plaintiff Kronholtz is violating the above-quoted section of the statute, as claimed by the defendants. As the court views it, a decision on this question is not sought under the prayers for relief. This provision was included in the original complaint brought before the board, and counsel for the defendants have referred to it at some length in their briefs. A number of cases in other jurisdictions which the court has examined seem to adopt the view taken by the defendants on this subject.

In accordance with this memorandum, a declaratory judgment may enter determining that it is not unprofessional conduct for the plaintiff Louis A. Kronholtz, under the provisions of § 4494 of the 1949 Revision (Rev. 1958, § 20-133) formerly § 1018e of the 1939 Cumulative Supplement, subdivisions (b) and (c), to practice his profession of optometry while in the employ of the plaintiff Michaels and Company and in charge of their optometrical office.

Injunctive relief will not be ordered at this time because the court trusts that the defendants will abide by the judgment of this court until such time as it shall be judicially determined otherwise.