Max MILLER and Ruth Miller

v.

UNITED STATES of America.

FIREMAN'S FUND INSURANCE
COMPANY

v.

UNITED STATES of America.

Civ. A. Nos. 60-388-J, 60-386-J.

United States District Court
D. Massachusetts.

Aug. 25, 1961.

Raymond F. Barrett, Quincy, Mass., for Max Miller and another.

George P. Lordan, Cambridge, Mass., for Fireman's Fund Ins. Co.

Elliot L. Richardson, U. S. Atty., James W. Noonan, Asst. U. S. Atty., Boston, Mass., for United States.

JULIAN, District Judge.

The plaintiffs, Max Miller and Ruth Miller, husband and wife, bring suit against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346 (b), to recover damages for personal injuries alleged to have been caused by the negligent operation of a motor vehicle by an employee of the defendant.

Fireman's Fund Insurance Company, claiming to be the assignee of Ruth Miller and also to be subrogated to her rights, brings its action under the same Act to recover for the damage done to her automobile.

The United States counterclaims against Max Miller for the damage done to the government vehicle.

All these claims arise from the same automobile accident.

The United States denies that its employee was negligent and further alleges that Max Miller was himself guilty of contributory negligence in the operation of Ruth Miller's automobile and that his negligence was imputable to Ruth Miller and that therefore neither they nor Fireman's Fund Insurance Company are entitled to recover.

The defendant admits that at the time of the accident its automobile was being operated by its employee while acting within the scope of his employment.

The accident happened on March 31, 1960, at about 10 p. m. at the intersection of Washington Street and Peach Street, both public ways in the town of Braintree, Massachusetts. Washington Street, also designated as route 37, is a macadam highway approximately 40 feet wide from curb to curb, running north-south, and is divided into four traffic lanes. Solid white lines along the center of the roadway separate the two northbound lanes from the two southbound lanes. Peach Street runs easterly from Washington Street into the residential area in which Max and Ruth Miller have their home. Peach Street does not cross Washington Street and there are no side streets on the westerly side of Washington Street opposite Peach Street. Washington Street runs moderately upgrade from a point a few hundred feet south of Peach Street to a point about 200 feet north of Peach Street.

By agreement of the parties the Court took a view of the scene of the accident.

The cars involved in the accident were a 1959 Plymouth sedan owned by Ruth Miller and a 1956 station wagon of the United States Coast Guard.

At the time of the collision Ruth Miller's car was being operated by her husband, Max Miller. She was riding in the front seat next to him. Mrs. Miller is herself a licensed driver and has had considerable experience in the operation of an automobile. "I would drive to Florida and back," she testified, "and not think anything of it." She is 43 years old. Her husband is 71. The government car

was being operated by a United States Coast Guardsman named Pallotta.

Max and Ruth Miller are officers and employees of a corporation that operates a large beauty shop in Quincy, Massachusetts, about five miles from the scene of the accident. Each owns one half of all the stock of the corporation. Mrs. Miller was paid a salary of $175 a week. She did extensive promotional publicity for the business and is an alert and capable woman.

On the evening of the accident Mr. and Mrs. Miller worked at the beauty shop until a little after 9:30 and then left for home in Ruth Miller's car. The husband drove and Mrs. Miller was seated in front next to him. They traveled south on Washington Street. They approached the Peach Street intersection at a reasonable rate of speed. From a point about 100 feet north of Peach Street the operator of a car moving south on Washington Street has an unobstructed view of the entire width of Washington Street for a distance of nearly a quarter of a mile. An operator moving north on Washington Street toward Peach Street has an unobstructed view of southbound traffic for the same distance.

Max Miller testified in substance as follows: When he reached a point about 100 feet from Peach Street he eased over toward the lane nearest the center line and upon reaching the intersection came to a full stop. He intended to make a left turn into Peach Street. He stopped the car on his "right-hand side of the road" headed directly south. The left wheels of the car were about a foot west of the center line. When his car had come to a stop he saw another car coming in the opposite direction towards him. Its headlights were on. It was then 700 or 800 feet away and going 65 or 70 miles an hour,—certainly not less than 65. There was nothing to obstruct Max Miller's view. There were no other cars ahead of him. The other car was not proceeding in a straight course. The headlights were going from one side of the road to the other. In about 5 or 6 seconds the other car was within 20 feet from the Miller car. The other car swayed over to Miller's side of the road and struck the Miller car. The right front of the government car hit the right front of the Miller car. When the cars collided the Miller car was moved about 2 or 3 feet, a little to the right and to the rear. The other car bounced in the air and landed across the road on the other driver's right.

Mrs. Miller testified in substance that her car came to a stop. She first saw the other car when it was about 600 feet away. Its lights were not coming steadily forward but went somewhat from side to side. It then came over to her side of the road and struck. She was thrust forward and downward by the impact and her mouth struck the dashboard. Nine of her upper teeth were knocked out or broken and she sustained other injuries.

Mr. Miller's injuries were not severe.

I do not accept the plaintiffs' version of the accident as true. I find it improbable in many respects and it does not accord with physical facts established by reliable and disinterested witnesses who came on the scene immediately after the accident. The debris that fell on the roadway from the damaged parts of the two automobiles at the time of the collision was found entirely on Pallotta's side of the road as far as 6 feet from the center line. The skid mark made by the government vehicle extending from the approximate point of collision southward for a distance of about 43 feet was also entirely within Pallotta's side of the road and about 6 feet from the center line.

At the time of the accident it was dark. Max Miller testified that it was a dry night, that the roadway was dry, and that the windshield wipers on the Miller car were not in operation. I find that it was drizzling, there was haze, and the roadway was wet. Pallotta had his windshield wipers in operation.

It is undisputed that the right front corner of the Coast Guard car struck the right front corner of the Miller car. The

damage done to both cars was substantial.

Pallotta, who was driving the Coast Guard car, was coming from Brockton, where he was stationed, and was going north on his way to Boston when he collided with the Miller car. As he approached the Peach Street intersection he was straddling the two northbound lanes.

I find upon all the evidence that Pallotta was negligent and that his negligence was a substantial cause of the collision. He approached the intersection at a rate of speed that was greater than was reasonable and proper in the circumstances. When he saw the Miller car moving toward the center line to make a left turn into Peach Street he applied the brakes, but because of his excessive speed he did not succeed in stopping in time to avoid the collision. His attempt to circumvent the Miller car by turning left at the last moment accounts for the fact that it was the right front corner of both cars that came into contact.

■ Contrary to the plaintiffs' testimony, I find that the Miller car did not come to a stop when it reached the intersection. As it moved toward the center line and reached the intersection preparatory to making a left turn, its speed, which had been moderate, was reduced to less than 10 miles an hour. Then, without having given any signal indicating his intention to make a left turn,[1] he initiated the left turn, entered the northbound side of Washington Street, and moved into the path of the rapidly approaching Coast Guard car. Max Miller's view of traffic coming from the south on Washington Street was unobstructed and the headlights of the government vehicle were plainly visible. If Max Miller had exercised reasonable care he would have known that when he was about to initiate the left turn the other car was too close and approaching him too fast to permit him to make the turn without incurring an unreasonable risk of injury to himself and his wife. He should have refrained from entering into Pallotta's side of the road. He should have waited. This he failed to do. I find upon all the evidence that the plaintiff Max Miller was guilty of negligence which contributed substantially to the happening of the accident and to the resulting injuries to himself and his wife.

With reference to the operation of her car by her husband from their place of work in Quincy to Peach Street on the evening of the accident, Mrs. Miller testified in substance that she gave him no directions as to speed, manner of driving, what route to take, or where to turn; that they were returning to their home from work; that her husband knew the way; that there was no necessity or occasion to tell him how to get there or how fast or slow he should go; that he was driving neither too fast nor too slow.

■ I find that the automobile was not being used solely for Max Miller's purposes or benefit, but for Mrs. Miller's as well. It was being used for their mutual convenience.

■ Under the Federal Tort Claims Act the United States is liable in the same manner and to the same extent as a private individual under like circumstances. The purpose of the Act was not the creation of new causes of action but acceptance of liability under circumstances that would bring private liability into existence. Since the accident occurred in Massachusetts, the issues of liability are to be determined in accordance with the laws of that State. 28 U.S.C. §§ 1346(b), 2674; United States v. Massachusetts Bonding & Ins. Co., 1 Cir., 1955, 227 F.2d 385, reversed on another point in 352 U.S. 128, 77 S.Ct. 186, 1 L.Ed.2d 189; United States v. Schultz, 1 Cir., 1960, 282 F.2d 628; D'Anna v. United States, 4 Cir., 1950, 181 F.2d 335; Stekovich v. United States, D.C.M.D.Pa.1952, 102 F.Supp. 925.

■ In Massachusetts the plaintiff's contributory negligence bars his recovery

---

1. See Mass.Gen.Laws, c. 90, § 14B.

against a defendant whose negligence would otherwise make him liable to the plaintiff for the harm sustained by him. It is also the law of that State that an employer is barred from recovering against a negligent defendant by the contributory negligence of his employee acting within the scope of his employment. The collision in this case was caused by a concurrence of the negligence of the defendant's employee while acting within the scope of his employment and by the contributory negligence of the plaintiff Max Miller. Therefore, neither Max Miller nor the defendant is entitled to recover.

The next question relates to the liability of the United States to the plaintiff Ruth Miller which, in turn, hinges on the imputability of her husband's contributory negligence to her.

In Massachusetts the negligence of the operator of an automobile in which the owner is traveling is chargeable to the owner if at the time of the collision the owner had the right to control the operation of the automobile. Menzigian v. LaRiviere, 1956, 334 Mass. 610, 137 N.E.2d 925. It is not necessary that there be an actual control by the owner to make the operator a servant or agent of the owner. It is sufficient that there is a right of control. Foley v. Hurley, 1934, 288 Mass. 354, 193 N.E. 2. The right to control the use of an automobile or any other chattel is one of the attributes of ownership and is possessed by the owner unless he has parted with it by surrender, abandonment, or otherwise, to the person using it. Mendolia v. White, 1943, 313 Mass. 318, 47 N.E.2d 294.

The right of control as an incident of ownership continues in the owner-occupant in the absence of evidence that it has been transferred to the operator. The right of control, however, that arises from ownership is prima facie only and may be contradicted or explained. Menzigian v. LaRiviere, supra. Whether the owner-occupant has retained his right to control the automobile is a question of fact, but the burden is upon him to come forward with evidence that he surrendered or abandoned control to the driver. Mendolia v. White, supra. The same rules apply in cases where the husband is driving and his wife, who is the owner of the automobile, is riding with him. Guy v. Union Street Railway, 1935, 289 Mass. 225, 193 N.E. 740.[2] In the Guy case, which is strikingly similar to the case before me, the husband's contributory negligence was held to be imputable to the wife so as to preclude her from recovering against a negligent defendant. The Massachusetts court there stated (289 Mass. at pages 229–230, 193 N.E. at page 742):

"It is conceivable that the plaintiff, although present in her registered automobile, could have divested herself of all right to operate it or to control its operation by her husband. * * * But the fact alone that she did not exercise control would not be sufficient to show abandonment of control. * * * Here the offer of proof went only so far as to show, if the evidence supporting it were believed, that the plaintiff on other occasions, as well as on the instant occasion, had not manifested any control over her husband either in the automobile or out of it as to its operation. It is plain [that] the offer of proof would not warrant an affirmative finding that the husband was not the agent of the plaintiff while the automobile was being used in the sole interest of the plaintiff. * * * The evidence of the plaintiff offered to prove surrender of control did not, if believed,

2. On the question of a married woman's right to control her own property, see Mass.Gen.Laws, c. 209, § 1:

"The real and personal property of a woman shall upon her marriage remain her separate property, and a married woman may * * * hold, manage and dispose of property, real and personal, in the same manner as if she were sole. * * *"

overcome the *prima facie* case of control retained by the plaintiff by virtue of her ownership of the automobile. * * * It is not necessary that there be an actual control by the owner to make the operator a servant or agent of the owner, it being sufficient that there is a right to control. * * * The fact, if proved, that the plaintiff had lent her automobile generally to her husband for use in his business did not preclude a finding by the jury, or a ruling by the judge, that he was the agent or servant of the plaintiff on the particular drive to the house of the plaintiff's sister in New Bedford. * * * The offer of proof did not go far enough to warrant a finding of the plaintiff's relinquishing control as owner, and was excluded rightly for that reason. It follows that if the husband was negligent and the plaintiff was present and riding in the automobile at the time of the accident, his negligence is imputed to the plaintiff and she cannot recover."

The following cases are in accord with the Massachusetts rule: Gochee v. Wagner, 1931, 257 N.Y. 344, 178 N.E. 553 (husband owner-occupant, wife driving); Freeman v. Scahill, 1943, 92 N.H. 471, 32 A.2d 817 (wife owner-occupant, husband driving); Piragnoli v. State, 1952, 280 App.Div. 849, 113 N.Y.S.2d 391 (follows Gochee case, supra); Ross v. Burgan, 1955, 163 Ohio 211, 126 N.E.2d 592, 50 A.L.R.2d 1275 (wife owner-occupant, husband driving); Shoe v. Hood, 1960, 251 N.C. 719, 112 S.E.2d 543 (wife owner-occupant, husband driving); see also Malone Freight Lines v. Tutton, 5 Cir., 1949, 177 F.2d 901; Watt v. United States, 1954, D.C.E.D.Ark.N.D.1954, 123 F.Supp. 906.

Pennsylvania, however, follows a different rule in cases where the husband is the driver and the wife is the owner-occupant. In Rodgers v. Saxton, 1931, 305 Pa. 479, 158 A. 166, 168, 80 A.L.R. 280, it was held that a husband driving his wife's car with the wife present is presumably in control of the car, and, in the absence of contrary evidence, is solely responsible for its operation, and that a wife riding in her own automobile while her husband is driving is not prima facie chargeable with his negligence. The reason for the rule is stated as follows:

"The husband is still the head of the family, and when he is at the wheel of that car, even with his wife present, the presumption is that he is in control of the car, and, in the absence of evidence to the contrary, he is solely responsible for its operation."

In Ross v. Burgan, supra, the Ohio court was confronted for the first time with the same issue that was presented in Guy v. Union Street Railway and Rodgers v. Saxton, namely, whether the contributory negligence of the husband who was driving should be imputed to his wife who was the owner-occupant of the car. After reviewing the cases the court declined to follow Rodgers and cited Guy with approval, stating (126 N.E.2d at page 595):

"A number of courts have adopted the rule, which appeals to us as fair and reasonable, that, where an owner is the passenger-occupant of his own automobile, a rebuttable presumption or inference arises that he has the control and direction of it, and that the driver is acting as his agent in operating the car."

No showing of relinquishment of control to her husband having been made, the wife was denied recovery.

Whether the plaintiff Ruth Miller had transferred or relinquished to her husband her right of control over the automobile is a question of fact. She was a licensed and experienced driver and riding in the front seat next to her husband who was driving. She was awake and there is no evidence that she was not well or in any way disabled. True, she gave him no directions as to how he should drive, how fast or slow he should go, what route he should take, or where or when he should make a turn. She testified that he knew the way home and was

driving neither too fast nor too slow, and that there was no necessity or occasion for her to give him any directions.

The fact alone that she did not exercise control, however, is not sufficient to show surrender or abandonment of control.

I find that Mrs. Miller did not surrender control of her automobile to her husband.

The case before me is governed by Guy v. Union Street Railway, supra; Mendolia v. White, supra; and Abbate v. Service Bus Lines, Inc., 1948, 323 Mass. 754, 82 N.E.2d 797. The facts in the Abbate case were more favorable to the plaintiff on the issue of surrender of control than they are here. Yet the court held that from those facts "it could not properly be found that the plaintiff [the owner-occupant] had surrendered control of her automobile to Aisi [the driver]."

I am not unmindful of Deyette v. Boston Elevated Railway, 1937, 297 Mass. 129, 7 N.E.2d 430, Kingsbury v. Terry, 1938, 300 Mass. 516, 16 N.E.2d 48, Sanjean v. Hyman, 1939, 302 Mass. 224, 19 N.E.2d 3, and Menzigian v. LaRiviere, supra, in which it was held that the evidence was sufficient to warrant a finding that the owner-occupant had surrendered control of the car to the driver. An examination of these cases shows that they are clearly distinguishable from ours.

On the facts of this case the law of Massachusetts requires that the contributory negligence of Max Miller be imputed to the plaintiff Ruth Miller. She is therefore precluded from recovering against the United States.

 Since the Fireman's Fund Insurance Company, the plaintiff in the second case, merely succeeded by subrogation and assignment to Mrs. Miller's claim against the United States for the damage done to her automobile, it stands in no better position than Mrs. Miller and is likewise not entitled to recover.

In the case of Max Miller and Ruth Miller v. the United States, Civil Action No. 60–388–J, I find for the defendant.

In the counterclaim of the United States against Max Miller, also Civil Action No. 60–388–J, I find for the counterclaim defendant.

In Fireman's Fund Insurance Company v. the United States, Civil Action No. 60–386–J, I find for the defendant.

Judgment in each case will be entered in accordance with my finding.