WILLIAM G. FOGLAND *vs.* BOARD OF REGISTRATION IN MEDICINE.

Suffolk. April 9, 1970. — June 11, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Doctor. Constitutional Law,* Doctor, Police power, Due process of law, Equal protection of laws.

Where it appeared that a petitioner, a citizen of Massachusetts, received a degree in medicine from a medical school in Australia, that upon his application for registration as a qualified physician in Massachusetts he failed in 1964 and 1965 to pass the "screening examination" then required by G. L. c. 112, § 2, and his application was denied, that he furnished documentary evidence that his medical education was substantially the equivalent of that of graduates of medical schools in the United States, that in 1965 he was granted a Standard Certificate after examination by the Educational Council for Foreign Medical Graduates, that in 1966 he was licensed to practise medicine in the State of New York, in which the standards were equivalent to those in Massachusetts, and that in 1968, after the amendment of c. 112, § 2, by St. 1966, c. 299, omitting screening examinations for registration here of foreign medical graduates but requiring them to hold Standard Certificates, the petitioner applied for indorsement registration here as a qualified physician without examination under c. 112, § 2, it was held that the petitioner was not excepted from the proviso thereof that "no person shall be so registered without an examination if he has attempted unsuccessfully to secure registration" here and that such proviso was not unconstitutionally applied to the petitioner by the Board of Registration in Medicine in denying his 1968 application. [629–630]

A citizen of Massachusetts who received a degree in medicine from "a medical school legally chartered in a sovereign state other than the United States or Canada" and who was required by G. L. c. 112, § 2,

before its amendment by St. 1966, c. 299, to take a "screening examination" for registration as a qualified physician here, was not unconstitutionally discriminated against in that the statute did not require graduates of Canadian medical schools to take screening examinations. [630]

PETITION for review filed in the Superior Court on February 19, 1969.

The case was heard by *Kalus,* J.

*Ansel B. Chaplin* for the petitioner.

*Daniel J. Johnedis,* Assistant Attorney General (*Walter H. Mayo, III,* Assistant Attorney General, with him), for the respondent.

REARDON, J.   The petitioner appeals from a final decree which affirmed a decision of the Board of Registration in Medicine (board).   The board denied the petitioner's application for licensure as a qualified physician in this Commonwealth by indorsement.   The case was tried on a statement of agreed facts which discloses the following.

The petitioner, a citizen of this Commonwealth with a domicil in Melrose, is a physician specializing in ophthalmology.   Licensed to practise medicine in the States of New York and New Hampshire, and in the United Kingdom and in Australia, he holds undergraduate and graduate degrees from Tufts University, and is a Bachelor of Medicine as well as a Bachelor of Surgery.   The latter two degrees were awarded to him by the University of Sydney in Australia.   He has been duly licensed in New South Wales, Australia, since 1956, in the United Kingdom since 1957, in the State of New York since 1966, and in the State of New Hampshire since 1968.   He holds a diploma in ophthalmology conferred upon him by the Conjoint Board of the Royal College of Surgeons and the Royal College of Physicians of England in 1962.   He holds also the Standard Certificate granted to him in 1965 after examination by the Educational Council for Foreign Medical Graduates.   A member of various medical associations, he is currently actively engaged in the practice of ophthalmology in a medical center in the State of New York.

The petitioner applied for registration as a qualified physician in this Commonwealth in 1964 under the provisions of G. L. c. 112, § 2. As it then read, that part relevant to the issue provided: "An applicant who has received from a medical school legally chartered in a sovereign state other than the United States or Canada a degree of doctor of medicine or bachelor of medicine or its equivalent, shall be required to furnish to the board such documentary evidence as the board may require that his education is substantially the equivalent of that of graduates of medical schools in the United States and such other evidence as the board may require as to his qualifications to practice medicine, and shall, except as hereinafter provided, be required to take a screening examination conducted periodically for such applicants by the National Board of Medical Examiners of the United States at the request of the board . . . ." Thereafter he was required by the board to take a screening examination since he was not a graduate of a medical school legally chartered in the United States or Canada. This examination he failed to pass in 1964 and again in 1965.

In 1966, G. L. c. 112, § 2, was amended by St. 1966, c. 299. A relevant part of the section as thus amended provided: "An applicant who has received from a medical school, legally chartered in a sovereign state other than the United States or Canada, a degree of doctor of medicine or its equivalent shall be required to furnish to the board such documentary evidence as the board may require that his education is substantially the equivalent of that of graduates of medical schools in the United States and such other evidence as the board may require as to his qualifications to practice medicine, and shall, except as hereinafter provided, be required to present a Standard Certificate granted after examination by the Educational Council for Foreign Medical Graduates; provided, however, that if he is a diplomate of a specialty board recognized by the American Medical Association he shall be admitted to examination for licensure without being required to present such a certificate." On July 10, 1968, the petitioner filed with the board an ap-

plication for indorsement registration as a qualified physician in this Commonwealth. On that date, and since, the statutory provision governing indorsement registration was contained in the following language in the final paragraph of G. L. c. 112, § 2: "The board may, without examination, grant certificates of registration as qualified physicians to such persons as shall furnish with their applications satisfactory proof that they have the qualifications required in the commonwealth to entitle them to be examined and have been licensed or registered upon a written examination in another state whose standards, in the opinion of the board, are equivalent to those in the commonwealth; provided, that no person shall be so registered without an examination if he has attemped unsuccessfully to secure registration in the commonwealth or if he is a graduate of a medical school not approved by the approving authority."

The petitioner as applicant was given a hearing before the board on September 19, 1968. The board stipulated during that hearing that the petitioner possessed qualifications required in Massachusetts to entitle him to be examined for licensure since he holds a Standard Certificate which he received after written examination by the Educational Council for Foreign Medical Graduates, and since he has submitted documentary evidence that his medical education is "substantially the equivalent of that of graduates of medical schools in the United States." The board also stipulated that the petitioner was licensed upon written examination in the State of New York where standards in the opinion of the board are equivalent to those maintained in Massachusetts. Subsequently, on January 27, 1969, the petitioner received a letter from the board stating that it had voted unanimously to deny him indorsement registration "because . . . [he] had attempted unsuccessfully to secure registration in the Commonwealth prior to . . . [his] licensure in New York" in 1966. In findings, rulings and an order for decree the trial judge recited the above stated facts and rejected the contention of the petitioner that the "'prior failure' proviso of the statute is unconsti-

tutional on its face and more particularly as it applied to
. . . [the petitioner]." The judge held the statute consti-
tutional and ordered the decision of the board affirmed.

The petitioner bases his appeal upon the argument that
any deficiency shown in previous failures to pass the written
licensing examination in Massachusetts was removed by
obtaining licensure through written examination in a State
of equivalent standards. He further argues that his licensure
in New York where standards are equal to those of Massa-
chusetts in effect "made up" the deficiency demonstrated
in his original attempt to procure licensure here. He claims
the action of the board denied to a citizen of Massachusetts
reciprocal licensure and imposed an unconstitutional pen-
alty. Assuming the validity of the proviso, he argues it
should not be applied to him since the statutory require-
ment of a screening examination was supplanted by the
provision that a graduate of a foreign medical school hold-
ing a Standard Certificate from the Educational Council
for Foreign Medical Graduates may be licensed. The ac-
tion of the board has been, he argues, "to perpetuate the
screening examination in a critical respect even after it had
been abolished as a statutory requirement."

Additionally, he argues that the original provision for a
screening examination was itself unconstitutional since it
was "superimposed upon the basic statutory requirement
that the foreign medical school graduate present 'docu-
mentary evidence' that his medical education was equal to
that of graduates of American medical schools." He claims
that having met that basic requirement he was discrim-
inated against and was forced to demonstrate his educational
qualifications by passing the "screening" examination, and
that the "prior failure" proviso should not be applied to
penalize him for "failing to meet in the past what was in
fact an unconstitutional requirement."

We have on a number of occasions delineated the respec-
tive rights of individuals and the government relative to the
privilege of licensure. The rights of the plaintiff to prac-
tise a profession duly protected under the Fourteenth

Amendment to the Constitution of the United States and arts. 1, 10 and 12 of the Declaration of Rights of our Constitution are to be evaluated in the light of the "paramount right of government to protect the public health by any rational means." *Lawrence* v. *Board of Registration in Medicine*, 239 Mass. 424, 428. *McMurdo* v. *Getter*, 298 Mass. 363, 366, and cases cited. *Commonwealth* v. *Finnigan*, 326 Mass. 378, 379. There is ample case law to the effect that statutes similar to G. L. c. 112, § 2, designed to safeguard the admission of physicians to practise, have been and are valid. *Commonwealth* v. *Jewelle*, 199 Mass. 558. *Lawrence* v. *Board of Registration in Medicine*, 239 Mass. 424, 428–429. *Dent* v. *West Virginia*, 129 U. S. 114. *Collins* v. *Texas*, 223 U. S. 288.

The objective of the Legislature manifest in a reading of G. L. c. 112, § 2, was to regulate the admission to practise of physicians who had failed to meet Massachusetts standards as determined in written examinations. Section 2 was designed to prevent them shopping from State to State until at length in some State they eventually met standards. Even if these standards could be deemed equivalent to those in Massachusetts, such applicants were not to be allowed to then return to Massachusetts and obtain admission through indorsement of their license on the basis of their qualification and licensure elsewhere.

The Commonwealth calls our attention to the case of *Sheedy* v. *Department of Registration and Educ.* 33 Ill. 2d 573. In that instance the applicant, who had failed the Illinois examination three times, petitioned for registration without examination by indorsement on a license from Arkansas. The Illinois statute governing reciprocal registration provided in part, "Under no circumstance shall a license be issued under the provisions of this Section to any person who has previously taken and failed the written examination conducted by the Department for such license." Ill. Ann. Stat. (Medical Practice Act) c. 91, § 14, ¶ 7. The Illinois court reasoned, "The legislature could reasonably infer that foreign applicants who have never taken the Illinois examination are at least presumptively qualified, or less

likely to be employing reciprocity provisions merely as an alternative method of becoming licensed in this State." The chief justice referred to the previous failures of the applicant and relative to him stated, "The distinction is predicated upon a valid ground since the assurance of competency afforded by the foreign license is not present where the applicant has taken and failed the Illinois examination. The difference in treatment is based on a reasonable belief that this assurance does not exist to a sufficient degree in the excluded applicants and we cannot say the legislature acted arbitrarily or unreasonably in excluding them." *Sheedy* v. *Department of Registration and Educ.*, *supra*, at pages 574–575. The language of the Illinois court appears to be entirely reasonable and applicable to the facts of this case. We adopt it as a guide in this case.

That the petitioner has met the requirement resulting from statutory change in that he holds a Standard Certificate does not, it seems to us, relieve him from the effect of the proviso. The language of the proviso has a broad sweep. What he seeks is to make an exception of his case on the ground that he has met the new statutory requirements, having failed to meet those requirements in effect when he took and failed the screening examination twice. We read the proviso, which is clear, as allowing no exceptions.

The argument of the petitioner that the screening examination requirement was unconstitutional we do not find tenable. We have referred to the broad rights of the State in making certain that applicants for the practice of medicine are qualified. The petitioner has argued that there was discrimination in that requirements made effective as to him were not imposed on the graduates of Canadian medical schools. It has been argued by the board that this statutory classification finds justification in the proximity of those schools to Massachusetts and, hence, the greater familiarity of our board with Canadian standards. We see no merit in the petitioner's argument on this point.

*Decree affirmed.*